**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clarence Eugene STRUNK, a/k/a Albert Gardner Wagner, Defendant-Appellant.**

**No. 71–1466.**

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1972.

Decided Aug. 16, 1972.

Rehearing Denied Sept. 7, 1972.

Certiorari Granted Jan. 8, 1973. See 93 S.Ct. 919.

John R. Wideikis, Chicago, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Michael L. Levinson, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

SWYGERT, Chief Judge.

At the conclusion of a one-day jury trial, appellant-defendant Clarence Eugene Strunk was found guilty of transporting on July 1, 1969 a stolen Oldsmobile station wagon from Oconomowoc, Wisconsin to Mount Vernon, Illinois in violation of 18 U.S.C. § 2312. The defendant was given a five-year sentence to run concurrently with one that he was then serving in the Nebraska State Penitentiary. The defendant appeals from his conviction alleging as the single ground for reversal the denial of his constitutional right of a speedy trial.

The following is a narration of the pertinent facts. On July 24, 1969 the defendant was arrested and held in custody of state authorities in Nebraska on a charge of burglary. On a plea of guilty to a reduced charge of grand larceny in a Nebraska state court, a sentence of one to three years was imposed.

While in custody of the state authorities the defendant was interviewed on September 3, 1969 by an agent of the Federal Bureau of Investigation. After receiving Miranda warnings, the defendant discussed with the agent the facts relating to the transportation of the car which is the subject matter of the instant prosecution. The defendant advised the agent that it was defendant's intention to "demand a speedy trial under Rule 20; and that was why he wanted to get this case cleaned up at the time I talked to him."

According to the record, "the case report of the Federal Bureau of Investigation was filed in Springfield, Illinois" on October 20, 1969, and on December 17 the United States Attorney for the Eastern District of Illinois received correspondence from the United States Attorney for the District of Nebraska which indicated that the defendant "desired to enter a plea to the charge under Rule 20, Federal Rules of Criminal Procedure." On the following day, the federal prosecutor sent the requested forms to Nebraska for processing the case under the rule.

Not having received any word whether the case would proceed under Rule 20 in the Nebraska district, the United States Attorney for the Eastern District of Illinois presented the matter to a grand jury in the latter part of May 1970. An indictment was returned on May 26.

Next the record reveals that on August 13, 1970 the United States Attorney for the District of Nebraska wrote his counterpart in Illinois that the defendant "definitely refused to enter a plea under Rule 20 and that the defendant definitely intended to raise the issue of speedy trial." Thereafter nothing happened until February 9, 1971, when the defendant, having been brought to East St. Louis on a writ of habeas corpus ad prosequendum, was arraigned in the district court for the Eastern District of Illinois. At the arraignment, counsel was appointed for the defendant, and, after a not guilty plea, the trial was set for March 29, 1971.

Prior to the trial, defendant's counsel moved for a dismissal of the indictment pursuant to Fed.R.Crim.P. 48(b), asserting that the defendant had been denied a speedy trial as guaranteed by the sixth

amendment. Briefs were filed by the parties, and the district judge, after hearing oral argument but without conducting an evidentiary hearing, denied the motion.

Approximately eleven months elapsed between the commission of the crime and the return of the indictment. The defendant, however, raises no issue with regard to the preindictment delay. He concedes that United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), forecloses consideration of that issue in his case. The issue he does raise concerns the Government's delay in bringing him to trial after the return of the indictment. The time elapsing between the filing of the charge and the trial was 306 days, or approximately ten months. The defendant contends that when all the circumstances are considered he was not offered a speedy trial and that the district judge erred in not dismissing the indictment.

█ Initially, it must be observed. that the record is scanty on the issue before us. No voir dire evidentiary hearing was conducted. Most of the facts must be gleaned from the docket entries and the briefs filed in the district court in support of and in opposition to the motion to dismiss. Nevertheless, while we considered remanding for an evidentiary hearing, we have concluded that the issue can be decided based upon the record before us and the oral argument. We do, however, emphasize that the better practice would be for the district court to conduct an evidentiary hearing upon a motion under Rule 48(b), and to make findings in ruling on the motion.

Recently, the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (June 20, 1972), had occasion to speak at length on the exact question before us. After acknowledging the uncertainty which courts experience in protecting the right of a speedy trial, the Court nevertheless rejected as overrigid two approaches urged upon it as a means of clarifying the issues. One approach was that a trial be offered the defendant within a specified time. On that point Mr. Justice Powell said, "[W]e find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." 92 S.Ct. at 2188.

. The second approach relates to what is designated the "demand-waiver" doctrine, which "provides that a defendant waives any consideration of his right to a speedy trial for any period prior to which he has not demanded a trial." 92 S.Ct. at 2189. After indicating that the waiver of the right to a speedy trial should be gauged with the same severity as is the waiver of other fundamental rights guaranteed by the Constitution, the Court found the demand-waiver doctrine unacceptable, saying, "We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." 92 S.Ct. at 2191.

█ As an alternative of the two rejected approaches—a fixed-time rule and the demand-waiver doctrine—the Court adopted a "balancing test" whereby the conduct of both the prosecutor and the defendant are weighed. Among the factors that courts should consider in applying the test, four were specifically identified: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Mr. Justice Powell proceeded to elaborate some of the considerations which might be relevant in evaluating each factor. The Court stressed the fact that the balancing approach necessarily requires that each case be determined on an *ad hoc* basis.

█ Although *Wingo* was decided after this case was briefed and argued, we are obligated to follow its teachings and apply it to the record before us.

█ Although the length of delay in bringing the defendant to trial, ten months, might not be deemed inordinate in some cases (for example, a complicated multi-defendant prosecution) it is

critical here in light of the simple nature of the case and the factors to which we shall refer. It should be stressed at the outset that while the time between arraignment and trial, February 9 to March 29, 1971, does not appear to be unreasonable, the time between indictment and arraignment, May 26, 1970 to February 9, 1971 is unusual and calls for explanation as well as justification.

The explanation offered by the Government for the delay in the arraignment is that until August 13, 1970 the United States Attorney was waiting for word from the defendant as to whether he was going to proceed under Rule 20 in the Nebraska federal court. The Government argues it should not be charged for that period of the delay—seventy-nine days. The only excuse offered by the United States Attorney for the balance of the delay in setting the arraignment date is that his office was understaffed.

We do not accept either of these explanations. As to the first, it must be emphasized that the defendant did not have counsel until his arraignment. What he may have understood about Rule 20 without legal advice is a matter of conjecture, but it does appear that he misapprehended its requirement of a guilty plea before it may be invoked in the transferee court. This is evidenced by his statement to the FBI agent in September 1969 that he intended to "demand a speedy trial under Rule 20." Whatever the facts may have been, we do know that the United States Attorney, after sending the necessary papers for transferring the case under Rule 20 in December 1969 and not hearing further, decided to present the case to the grand jury in the latter part of May 1970.* We regard as extremely tenuous the United States Attorney's argument that he was still waiting for word from the defendant after May 26 in view of the fact that after he did hear from the

defendant in August he made no move to set the arraignment date for six more months. Moreover, we summarily reject the additional reason advanced for the delay, the characterization of the United States Attorney's office as understaffed.

Although the defendant may have contributed to some of the delay in bringing the indictment by considering the invocation of Rule 20, he certainly contributed nothing to the delay thereafter. If his statements to the prosecution authorities mean anything, they indicate that rather than postponement he desired a speedy disposition of his case.

Appellant's counsel candidly admits that the delay in bringing the defendant to trial did not cause any prejudice with respect to the defense of the case. The prejudice lies, it is claimed, in delaying the commencement of his federal sentence. Since the sentence he received, the maximum term of five years, was to run concurrently with the one- to three-year sentence he was serving in the Nebraska State Penitentiary, defendant argues that the delay deprived him of the possibility of crediting the 306 days between indictment and trial to both sentences. In other words, he argues that he received in effect the maximum sentence plus 306 days. His argument is weakened by the possibility that the sentencing court might have postponed commencement of his federal sentence until after he had served his state sentence. On the other hand, the Supreme Court addressed itself to this very problem in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). There the Court said:

> Suffice it to remember that this constitutional guarantee has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: "(1) to prevent undue and

---

\* In addition, there is nothing in the record to indicate that the defendant was ever notified of the indictment prior to the issuance of the writ of habeas corpus ad prosequendum.

oppressive incarceration prior to trial. . . ."

The Court then observed:

> At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. 393 U.S. at 377, 89 S.Ct. at 577.

After balancing the various factors outlined in *Wingo*, we conclude that the defendant was denied a speedy trial to his prejudice.

■ The remedy for a violation of this constitutional right has traditionally been the dismissal of the indictment or the vacation of the sentence. Perhaps the severity of that remedy has caused courts to be extremely hesitant in finding a failure to afford a speedy trial. Be that as it may, we know of no reason why less drastic relief may not be granted in appropriate cases. Here no question is raised about the sufficiency of evidence showing defendant's guilt, and, as we have said, he makes no claim of having been prejudiced in presenting his defense. In these circumstances, the vacation of the sentence and a dismissal of the indictment would seem inappropriate. Rather, we think the proper remedy is to remand the case to the district court with direction to enter an order instructing the Attorney General to credit the defendant with the period of time elapsing between the return of the indictment and the date of the arraignment. Fed.R.Crim.P. 35 provides that the district court may correct an illegal sentence at any time. We choose to treat the sentence here imposed as illegal to the extent of the delay we have characterized as unreasonable.

The cause is remanded with direction. The mandate shall be issued forthwith.