UNITED STATES of America, Plaintiff-Appellee.

v.

Carl Eugene DeTIENNE and Charles Henry Askins, Defendants-Appellants.

Nos. 71-1744 and 71-1745.

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1972.

Decided Sept. 18, 1972.

Rehearing En Banc Denied Oct. 31 and Nov. 1, 1972.

Certiorari Denied Jan. 22, 1973. See 93 S.Ct. 974.

Charles J. Kolker, Edward P. Burke, E. St. Louis, Ill., for defendants-appellants.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Michael L. Levinson, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

On December 5, 1969, an indictment was returned against appellants and Francis Huntley, charging them with the September 25, 1968, attempted robbery of the First State Bank of Beecher City, Illinois, together with an assault with a dangerous weapon on Dorwin Barr, the bank's cashier.[1] In April 1971 Huntley pleaded guilty to the attempted bank robbery charge and shortly thereafter was sentenced to fifteen years' imprisonment. Askins pled not guilty on April 1, 1971, and DeTienne entered the same plea on May 4, 1971. Their joint jury trial commenced on July 13, 1971, and concluded two days later with a verdict of guilty as charged in the indictment. Appellants were each sentenced to fifteen years' imprisonment and have appealed from their convictions.

*Sixth Amendment Right to a Speedy Trial*

Both appellants urge reversal of their convictions on the ground that they were denied their right to a speedy trial guaranteed by the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure.

DeTienne was arrested in Chicago on October 3, 1968, by the Federal Bureau of Investigation pursuant to a federal Unlawful Flight to Avoid Confinement Arrest Warrant issued September 17, 1968, at the request of the State's Attorney of Rock Island County, Illinois. In March 1968 DeTienne, along with Askins, had been convicted in the Rock Island Circuit Court of theft, forgery, and conspiracy, and the State's Attorney requested the federal warrant on August 13, 1968, following DeTienne's forfeiture of his appeal bond and the consequent issuance of a state bench warrant for his arrest. Upon his October 3d arrest on the federal unlawful flight warrant, DeTienne was immediately transferred to the Rock Island jail where the state arrest warrant was served on the following day. Accordingly, five days later the federal arrest warrant was dismissed. On October 4, DeTienne and Huntley were identified in an FBI lineup at the Rock Island jail by eyewitness Dorwin Barr. The Government acknowledges that the bulk of the FBI investigation was completed by November of 1968. As noted, the indictment was returned on December 5, 1969, and ten days later federal arrest warrants based on these offenses were for the first time issued for appellants and Huntley. On December 29, 1969, a federal detainer was placed on DeTienne who was then serving a sentence at the Illinois Penitentiary at Menard, Illinois. His actual arrest occurred there on May 3, 1971,

---

1. The indictment specified that appellants' acts violated 18 U.S.C. §§ 2, 2113(a) and 2113(d).

when counsel was appointed to represent him, and he was arraigned the next day.

Askins and Huntley were taken into local custody by officers of the Rock Island Police Department on October 1, 1968. Askins' arrest was pursuant to a July 3, 1968, state court bench warrant issued for violation of the probation on which he was placed following his March 1968 state conviction and pursuant to a federal warrant charging unlawful flight to avoid confinement for the probation violation. The federal warrant was requested and issued on the same respective dates as the federal warrant for DeTienne's arrest, but since Rock Island officials first obtained custody of Askins based on the underlying state charge, *no return was made on the federal warrant for his arrest*, and the latter was subsequently dismissed. When on October 1 Askins and Huntley were accosted by the Rock Island police, they were in possession of a 1962 blue Cadillac automobile which allegedly was driven by Askins at the time of the attempted robbery.

On September 5, 1969, before the federal attempted bank robbery indictment had been returned, Askins was released on parole from the Illinois State Penitentiary at Joliet. The FBI could not locate him thereafter until he was arrested in Fort Pierce, Florida, on January 14, 1971, on a Dyer Act charge of driving a stolen Cadillac.[2] Later that month, the federal arrest warrant, issued December 15, 1969, for the Beecher City bank robbery, was forwarded to the United States Marshal in Florida for service upon Askins.

■ Although they were not indicted until December 5, 1969, appellants would have us measure "delay" for Sixth Amendment purposes from the time of their arrests in October 1968. In United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, the Supreme Court held that "the

Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'." In that case the protection of the Amendment attached only upon the return of an indictment, but the Court made clear that the event transforming a person into an "accused" "need not await indictment, information or other formal charge." *Id.* at 321, 92 S.Ct. at 463. That event may occur when "actual restraints [are] imposed by arrest and holding to answer a criminal charge" (*id.* at 320, 92 S.Ct. at 463), but it does not occur until arrest. *Id.* at 321, 92 S.Ct. 455. However, appellants cannot invoke their speedy trial guarantee as of their October 1968 arrests. This is because those arrests were based on local arrest warrants involving other charges and federal warrants charging unlawful flight to avoid confinement for unrelated state offenses. It would be absurd in the extreme if an arrest on one charge triggered the Sixth Amendment's speedy trial protection as to prosecutions for any other chargeable offenses. Of course, if the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable, the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses. No such situation is presented in this case, and the appellants did not become "accused" for Sixth Amendment purposes on the occurrence of their unrelated October 1968 arrests.

■ In seeking to bring their pre-indictment delay within the reach of the Sixth Amendment's protection, appellants stress the fact that the FBI had completed the bulk of its investigation by November 1968, at which time indictments could have been sought. But it was just such a theory—measuring de-

2. The Probation Office records in appellants' appendix give January 14, 1971, as the arrest date, but Askins' motion to dismiss and supporting affidavit give the date as "February, 1971."

lay cognizable under the Sixth Amendment from the point at which the Government could have accused the putative defendant—that the Supreme Court explicitly rejected in *Marion, supra* at 313, 319, 321 n. 13, 92 S.Ct. 455. Consequently, it avails the appellants nothing here.

 Because appellants were not arrested on the attempted bank robbery charges until after the indictments for those charges were returned, as in *Marion* it is the indictment's date, December 5, 1969, on which appellants became accused for the purpose of computing pretrial delay cognizable under the Sixth Amendment. Similarly appellants fare no better under Rule 48(b) of the Federal Rules of Criminal Procedure which authorizes dismissal of an indictment for unreasonable delay in presenting a charge to the grand jury because "[t]he rule is clearly limited to post-arrest situations." United States v. Marion, *supra* at 319, 92 S.Ct. at 463. The pre-indictment delay herein was well within the applicable statute of limitations, which remains the primary yardstick for measuring pre-accusation delays to prevent possible prejudice. *Id.* at 322–323, 92 S.Ct. 455. Furthermore, appellants have not shown that the pre-indictment delay in this case caused substantial prejudice to their rights to a fair trial and that the delay was an intentional device to gain technical advantage over the accused. Therefore, the due process clause of the Fifth Amendment also does not require dismissal of the indictment. *Id.* at 324, 92 S.Ct. 455.

 There was a nineteen-month delay between the indictment and appellants' trial. Understandably, the Government wished to try appellants together, but Askins' whereabouts were unknown at least from April 1970 until January 14, 1971, when he was found in Florida driving a stolen automobile.[3] By absconding a few months after his parole from the Illinois State Penitentiary in Joliet, Askins clearly waived his right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 528, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (decided June 22, 1972). Although counsel was appointed for Askins on March 30, 1971, his motion to dismiss the indictment for want of speedy trial was not filed until July 12, 1971, just the day before the case was called for trial, and apart from the dates relied upon by the counsel, neither the motion nor supporting affidavit showed any reason to grant it. For these reasons, the time lapse between his arrest in Florida in mid-January and his trial six months later cannot be considered unreasonable.

 As to DeTienne, the Supreme Court has recently delineated four factors to be considered in determining whether a defendant has been deprived of his right to a speedy trial. These are length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Barker v. Wingo, *supra*, 92 S.Ct. 2182. With regard to the duration of the delay, a nineteen-month post-indictment delay in this type of case gives rise to a certain amount of presumed prejudice. If it did not, "there [would be] no necessity for inquiry into the other factors that go into the balance." *Id.* But this length by itself does not establish denial of the right to a speedy trial since there is "no constitutional basis for holding that the speedy trial right can be quantified into

---

3. The Government maintains that Askins could not be located from the time of the issuance of the federal arrest warrant on December 16, 1969, following his December 5, 1969, indictment until his January 14, 1971, arrest. In this regard the United States Probation Officer's Report concerning Askins' prior record indicates that following his September 5, 1969, parole from the Illinois State Penitentiary, Askins provided his parole officer with false information regarding his residence and employment for a number of months prior to his absconding about April 15, 1970.

a specified number of days or months" (*id.* at 522, 92 S.Ct. at 2188), and since "none of the four factors identified above [is a] sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 532, 92 S.Ct. at 2193.

The Government has explained that the delay was principally occasioned by its desire to try appellants jointly and its inability to locate Askins. While the Government's pragmatic desire to try the participants in a criminal scheme together hardly warrants unquestioning acceptance when pitted against a single defendant's right to a speedy trial, on the scale of possible justifications for the delay this reason deserves some deference here. In this regard there is no reason to doubt the Government's candor, and it is particularly important that the Government did not insist on waiting for the discovery of Askins' whereabouts in the face of any asserted desire by DeTienne to be tried promptly.

■ Although its significance is dubious as a separate factor, we note that DeTienne did not demand a speedy trial until his counsel moved to dismiss the indictment for lack thereof about ten days before the trial. See Barker v. Wingo, *supra*, 92 S.Ct. 2182. On December 29, 1969, a federal detainer was placed on DeTienne while he was serving a prison term at the Menard State Penitentiary, and he admits to having his resulting inquiry to the federal marshal answered by letter dated January 9, 1970, informing him that the grand jury had indicted him for attempted bank robbery and assault. He was thus fully cognizant of the charges pending against him. It is difficult to assess DeTienne's responsibility for failing earlier to assert his speedy trial right, for on the one hand counsel was not appointed to represent him in this case until May 3, 1971, but on the other, his prior experience as a criminal

defendant as well as a letter written to his counsel and reproduced in appellant's appendix would indicate his awareness of his right to a speedy trial. Although in *Barker* the Supreme Court finally put to rest the demand-waiver rule, "[t]his does not mean, however, that the defendant has no responsibility to assert his right." *Id.* at 528, 92 S.Ct. at 2191. In making the defendant's assertion or failure to assert his right one factor to be thrown into the balance, whose weight is dependent upon the surrounding circumstances, the Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193.

■ Apart from the "anxiety and concern" and the inability to recall DeTienne vaguely alludes to, he has identified no specific prejudice worked by the delay. Demonstration of the most serious form of prejudice, impairment of the ability to defend against the charges, is especially wanting. Although there is a perfunctory and conclusory recitation of an impairment of defensibility, as in the *Barker* case, there is not even a claim that any of DeTienne's witnesses died or otherwise became unavailable owing to the delay. See Barker v. Wingo, *supra*, 92 S.Ct. 2182. DeTienne refers us to no vital lapses of memory exhibited in the trial transcript, much less to any that could possibly have been significant to the outcome of the Government's substantial case against him. See *id.* In short the only prejudices DeTienne points to are the generalized ones of faded memories, anxiety, and oppressive incarceration presumptively attendant on a delay of this length. While it is true that appellant's incarceration in service of a prison term during the period of pretrial delay does not negative the presumptive prejudice (see Smith v. Hooey, 393 U. S. 374, 378–380, 89 S.Ct. 575, 21 L.Ed.2d

607), that generally inferable prejudice, unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other factors than was made here, does not alone make out a deprivation of the right to speedy trial.[4] To hold otherwise would be too nearly tantamount to equating the length of this delay with denial of the Constitutional right.

In sum, we hold that the Sixth Amendment and Rule 48(b) were not violated by the delays occurring in this case. Next we consider four other points raised by Askins.

### Refusal to Grant Askins' Demand for a Separate Trial

 Under Rule 14 of the Federal Rules of Criminal Procedure, the trial court may order a severance of defendants if it appears that a defendant is prejudiced by their joinder.[5] Askins contends that a joint trial was unfair because the Government had a weak case against him and a strong case against DeTienne. However, our appraisal of the record shows that the Government also had a strong case against Askins, the driver of the getaway car at the time of the attempted bank robbery. Codefendant Huntley, who had pled guilty to the attempted bank robbery charge and was subject to extensive cross-examination, gave testimony con-

stituting ample proof of Askins' participation, and there was other corroborative testimony as well. Consequently, the district court did not abuse its discretion in denying the motion for severance. United States v. Blue, 440 F.2d 300 (7th Cir. 1971).

### Admission of Bank's Federal Deposit Insurance Corporation Certificate of Membership

 The trial court received in evidence a Federal Deposit Insurance Corporation certificate of membership dated December 23, 1969, and issued to the Beecher City Bank. The evidence was admitted to prove that the Beecher City Bank was insured by the Federal Deposit Insurance Corporation to qualify as a "bank" within the meaning of the bank robbery statute. See 18 U.S.C. § 2113(f). Appellant claims the admission of this certificate to be error since it was not probative of the crucial issue of whether the bank was insured by the F.D.I.C. on September 25, 1968, the date of the attempted robbery, and since it violated the best evidence rule. However, the bank's cashier testified that the December 23, 1969, certificate was tendered to the bank as a periodic renewal of a prior certificate which covered the bank on the date of the attempted robbery and that the prior certificate had been destroyed upon its

---

4. Appellants rely on Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, but there the prisoner made diligent and repeated efforts to secure a prompt trial. Two witnesses died and a third became unavailable and the police records were lost or destroyed. No reason for the seven-year delay was advanced by the State. Accordingly, *Dickey* does not support appellants' position.

United States v. Strunk, 467 F.2d 969 (7th Cir. decided August 16, 1972) is also distinguishable. In that case the surrounding circumstances showed one of the Government's explanations for delay to be of tenuous plausibility, and the additional explanation proffered—a manpower shortage in the United States

Attorney's office—was summarily rejected by the Court. *Id.* at 972. Moreover, rather than the complete silence of DeTienne, appellant there twice made early statements to the prosecution "indicat[ing] that rather than postponement he desired a speedy disposition of his case." *Id.* at 972. It must be remembered that the balancing test we undertake to apply "necessarily compels courts to approach speedy-trial cases on an *ad hoc* basis." Barker v. Wingo, *supra*, 407 U.S. at 530, 92 S.Ct. at 2192; United States v. Strunk, *supra*, 467 F.2d at 969.

5. Rule 14 is derived from the common law, and we are entirely unpersuaded by Askins' arguments, unsupported by precedent, that it is unconstitutional.

lapse and replacement. He further directly testified as to the bank's insured status on September 25, 1968. We think that with this foundation there can be no serious question as to the probative value of the admitted certificate or as to the sufficiency of the evidence to establish the Beecher City Bank's federally insured status on the date of the attempted robbery. Furthermore, the destruction of the replaced certificate constitutes the classical excuse for its non-production, McCormick, Handbook of the Law of Evidence, 413 (1954), and although the admitted certificate was not literally a copy of the original, with the foundation testimony regarding it, that certificate, coupled with the direct testimony regarding the original's contents and the bank's insured status on the date in question, well satisfied the essential purpose of the best evidence rule. See 4 Wigmore on Evidence §§ 1192, 1264 (3d ed.).

*Admission of Government Exhibits Nos. 11-13*

Government exhibits nos. 11, 12 and 13 are photographs of a light blue Cadillac involved in the robbery attempt. Although appellant's claim is to the contrary, suffice it to say that they were sufficiently identified for the district court to have been well within its discretion in admitting them into evidence.

*Denial of Askins' Motion for a New Trial*

Askins also asserts that his motion for a new trial should have been granted because the verdict was contrary to the weight of the evidence. On the contrary, our examination of the transcript shows that the evidence clearly preponderates against him. The jury could surely find him guilty beyond a reasonable doubt. The other grounds urged by Askins in support of his motion for a new trial are frivolous.

The judgments are affirmed.