UNITED STATES of America

v.

John HOLMAN a/k/a "John Jacobs", Petro Williams, John Bernard a/k/a "John Norman", James Hutchinson a/k/a "Smack", Timothy Jenkins, Benny Stevenson, Ismael Pagan Quinones a/k/a "Izzy", William Antonio Quinones a/k/a "Chengo" a/k/a "Willie", Jessie Montero, Miriam Rios a/k/a "Miriam Gonzales", Candida Figueroa, John Doe a/k/a "Moses".

Crim. No. 79–139.

United States District Court,
E. D. Pennsylvania.

Feb. 5, 1980.
Memorandum Order On Reconsideration
March 1, 1980.

Edward Dennis, Steven V. Wehner, Philadelphia, Pa., for plaintiff.

Gerald A. Stein, Philadelphia, Pa., for Holman.

Gilbert J. Scutti, Philadelphia, Pa., for Williams.

Oscar N. Gaskins, Philadelphia, Pa., for Norman.

Max Meshon, Philadelphia, Pa., for Hutchinson.

Louis W. Fryman, Philadelphia, Pa., for Jenkins.

Alan B. Epstein, Philadelphia, Pa., for Stevenson.

Charles B. Burr, II, Philadelphia, Pa., for W. A. Quinones & Figueroa.

Gordon Gelfond, Philadelphia, Pa., for Montero.

Ronald A. White, Philadelphia, Pa., for Rios.

## OPINION

LOUIS H. POLLAK, District Judge.

John Holman, Ismael Pagan Quinones, and ten other persons were indicted for conspiring to engage in the unlawful traffic of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 843(b) and 952(a). Holman and Ismael Quinones were also charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848. In addition, there were nine counts of aiding and abetting the possession of heroin with the intent of distributing it in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, brought against various defendants. On September 6, 1979, I ordered Charles B. Burr, II, Esquire, to discontinue his representation of either Candida Figueroa or William Antonio Quinones, both of whom he was attempting to represent at the time. An appeal was taken, and the order was affirmed on January 17, 1980. After another attorney replaces Mr. Burr in the representation of one of Mr. Burr's clients, and has an opportunity to become familiar with the case, trial ought to commence promptly. Wherefore, it seems appropriate at this time to proceed to the disposition of numerous pending pre-trial motions.[1]

## (I) MOTIONS TO DISMISS

(A) Constitutionality of 21 U.S.C. § 848.

■ John Holman has moved to dismiss count two of the indictment on the ground that 21 U.S.C. § 848, which provides particularly severe penalties for those engaging in a "continuing criminal enterprise" as defined by the section, is unconstitutionally vague. The defects pointed to by the defendant are the requirements, among other things, that a person violating the provision shall have committed a narcotics felony as part of "a continuing series of violations of this subchapter" and shall have obtained "substantial income" from such violations. 21 U.S.C. § 848. Although the constitutionality of this provision has not been expressly ruled on by our Court of Appeals, it has been upheld by the Second, Fifth, Sixth, Eighth and Ninth Circuits. *United States v. Manfredi*, 488 F.2d 588 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *United States v. Cravero*, 545 F.2d 406 (5th Cir. 1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977); *United States v. Collier*, 493 F.2d 327 (6th Cir.), *cert. denied*, 419 U.S. 831, 95 S.Ct. 56, 42 L.Ed.2d 57 (1974); *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *United States v. Valenzuela*, 596 F.2d 1361 (9th Cir. 1979). Conceivably there might be situations in which this statute would be unconstitutional as applied. See *United States v. Valenzuela*, 596 F.2d at 1367–8. But I agree with the great weight of the case authority that the provision is not unconstitutionally vague on its face.

(B) Double Jeopardy.

■ Defendant Hutchinson argues that he has already been tried for overt act # 20 by the Commonwealth of Pennsylvania and that retrial would violate the double jeopardy provision of the Fifth Amendment. However, pursuant to the principle of dual sovereignty, the Fifth Amendment does not preclude trial by both state and federal governments of the same individual for the same offenses. *Abbate v. United States*, 359 U.S. 187, 193–96, 79 S.Ct. 666, 669–71, 3 L.Ed.2d 729 (1959); *United States v. Lanza*, 260 U.S. 377, 383, 43 S.Ct. 141, 143, 67 L.Ed. 314 (1922).[2]

---

1. On September 6, 1979, defendant Jenkins requested permission to join the pre-trial motions of his co-defendants to the extent applicable. While not wishing to encourage this sort of short-cut legal representation, I granted the requested permission. Accordingly, the disposi- tions of the motions made in the accompanying order will apply to Mr. Jenkins as well.

2. Nonetheless, under its so-called "Petite policy" (which takes its name from *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)), the Justice Department normally

(C) Pre-Indictment Delay and Due Process.

Defendants Holman, Hutchinson and Stevenson have moved to dismiss the indictment on the grounds that delays prior to their indictment have denied them speedy trials in violation of the Sixth Amendment or, in the alternative, have denied them Fifth Amendment due process. The facts giving rise to these speedy trial/due process claims are summarized by the Government as follows:

> Benny Stevenson was arrested by the Philadelphia Police on August 18, 1976 for delivery of a controlled substance, 2 counts of manufacturing of a controlled substance, 3 counts of possession with intent to manufacture controlled substance, 3 counts of possession with intent to deliver a controlled substance and 3 counts of criminal conspiracy. John Holman and Petro Williams were also arrested on August 18, 1976 on similar charges. An arrest warrant was issued for James Hutchinson, but was never executed. All arrest warrants were dismissed by the local authorities when the United States Attorney's office agreed to conduct an investigation into the matter.

Government's Answer to Defendants' Motion to Dismiss, at p. 1 n.1.

The speedy trial/due process arguments are these: The Sixth Amendment right to a speedy trial attaches only to those who have been "accused." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). The speedy trial rights of these defendants should be held to have attached at the time of the 1976 state arrests, since they were arrests for the same offenses as this indictment and thus, defendants were then first "accused" of these offenses. *United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973). Even if the court concludes that the Sixth Amendment rights did

not attach at that time, however, the indictment should be dismissed because of the prejudicial delay between the time the federal government first could have indicted and the time that they actually did so—that delay denying due process. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion, supra.*

The Ninth Circuit recently summarized the legal context for this kind of argument:

> The Constitution provides two separate safeguards against delay in the different stages of the investigation and prosecution of a crime. In the pre-indictment or pre-arrest stage delay is tested by the general proscriptions of due process. Because of statutory safeguards in the form of statutes of limitation, "the Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Pre-indictment delay is permissible unless it violates "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Rochin v. California*, 342 U.S. 165, 173, 72 S.Ct. 205, 96 L.Ed. 183 (1952). See also *United States v. Lovasco*, supra, 431 U.S. at 790, 97 S.Ct. 2044, 2049. *Ham v. South Carolina*, 409 U.S. 524, 526, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941); *Hebert v. Louisiana*, 272 U.S. 312, 316 [47 S.Ct. 103, 71 L.Ed. 270] (1926); *Hurtado v. California*, 110 U.S. 516, 535, 4 S.Ct. 111, 28 L.Ed. 232 (1884).
>
> But once a person becomes "accused" the more stringent requirements of the Sixth Amendment speedy trial right apply. One becomes "accused" when there is "either a formal indictment or information or else the actual restraints imposed

foregoes pursuit of federal charges following a state prosecution for the same offense; exceptions must be expressly approved by an Assistant Attorney General. "The policy is useful to the efficient management of limited executive resources and encourages local responsibility in law enforcement. But it also serves the

more important purpose of protecting the citizen from any unfairness that is associated with successive prosecutions based on the same conduct." *Rinaldi v. United States*, 434 U.S. 22, 27, 98 S.Ct. 81, 84, 54 L.Ed.2d 207 (1977). (footnote omitted).

by arrest and holding to answer a criminal charge . . . ." *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). (Emphasis added). At this stage, although standards are still imprecise, the courts have been more willing to find delay to be constitutionally impermissible.

This case is complicated because it presents issues of delay encompassing both the pre-arrest and the "accused" stages.

*Arnold v. McCarthy,* 566 F.2d 1377, 1381–82 (9th Cir. 1978).

### 1) Sixth Amendment

As the Government's memorandum makes clear, the question whether a state arrest can render a person "accused" for purposes of the Sixth Amendment right to a speedy trial in a subsequent federal prosecution has been expressly considered by the Courts of Appeals for the First, Second, Fifth, Seventh, Eighth and Ninth Circuits. *United States v. Cabral, supra; United States v. Mejias,* 552 F.2d 435 (2d Cir. 1977), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115; *United States v. Phillips,* 569 F.2d 1315 (5th Cir. 1978); *United States v. DeTienne,* 468 F.2d 151 (7th Cir. 1972), *cert. den.* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973); *United States v. Burkhalter,* 583 F.2d 389 (8th Cir. 1978); *United States v. Romero,* 585 F.2d 391 (9th Cir. 1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). The closest that the Third Circuit seems to have come to this issue is a summary affirmance. *United States v. Dabney,* 393 F.Supp. 529 (E.D.Pa. 1975), *aff'd without opinion,* 527 F.2d 644 (3d Cir. 1976); *United States v. Clark et al.,* 398 F.Supp. 341 (E.D.Pa.1975), *aff'd without opinion,* 532 F.2d 745, 746, 748 (3d Cir. 1976) (the two cases were related and the trial judge made the same determination in each). Only in the First Circuit case, *Cabral,* was it squarely held that a federal defendant's Sixth Amendment speedy trial rights attached at the time of his state arrest. The defendants here also rely on the Seventh Circuit case, *DeTienne,* and on the district court decision affirmed by the

Third Circuit in *Clark* ; but what they rely on is dicta, for each of those opinions distinguished *Cabral* and found that state arrests had not triggered the Sixth Amendment rights since the federal prosecutions were for different offenses. As the trial judge stated in *Clark* :

The Sixth Amendment right to a speedy trial does not attach prior to indictment or arrest. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Similarly, the provisions of Rule 48(b) of the Federal Rules of Criminal Procedure are clearly limited to post-arrest situations, *United States v. Marion, supra,* 404 U.S. at 319, 92 S.Ct. 455, *United States v. Dukow,* 453 F.2d 1328 (3d Cir. 1972), *cert. den.* 406 U.S. 945, 92 S.Ct. 2042, 32 L.Ed.2d 331.

An arrest on state charges, under the circumstances presented by this case, does not trigger any Sixth Amendment rights with respect to federal charges which may follow. "It would be absurd in the extreme if an arrest on one charge triggered the Sixth Amendment's speedy trial protection as to prosecutions for any other chargeable offenses", *United States v. DeTienne,* 468 F.2d 151, 155 (7th Cir. 1972), although "if the crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable, the initial arrest may well mark the speedy trial provision's applicability as to prosecution for all the interrelated offenses", *Id.* at 155. In the instant case, the state charges included aggravated robbery, kidnapping, conspiracy, burglary, violation of the Uniform Firearms Act, and carrying a concealed deadly weapon, some or all of which offenses could clearly be completed by acts which took place at or near the Kellys' home, and are thus independent of the federal bank robbery offense which constitutes the basis for the instant indictment.[3]

[3] The instant case is thus distinguishable from *United States v. Cabral,* 475 F.2d 715, 717–718 (1st Cir. 1973), in which a state policeman arrested the defendant for possession of a

sawed-off shotgun and possession of stolen property, although he was ultimately arraigned on a charge of grand larceny, which was later dismissed. Three days after the arrest, the sawed-off shotgun was turned over to federal authorities, who waited fifteen months to seek an indictment under 26 U.S.C. § 5861(i). Under these circumstances and the substantial identity of the charge on arrest and at the ultimate federal prosecution, the court concluded that the speedy trial guarantee attached at the time of initial arrest. In the instant case, however, in which the federal charges do not in any sense "gild the charge(s) underlying (the) initial arrest", *United States v. DeTienne, supra,* 468 F.2d at 155, this reasoning is inapplicable. *United States v. Clark, supra* at 349. The same distinction led the Ninth Circuit to refuse to follow *Cabral* in *United States v. Romero, supra,* and may have been the basis for a similar refusal in the Eighth Circuit in *United States v. Burkhalter, supra.* The Fifth Circuit refused to follow *Cabral* because the claim before it was under the Speedy Trial Act and not the Sixth Amendment as in *Cabral. United States v. Phillips, supra.* This leaves only the Second Circuit which, squarely confronting a state arrest for substantially the same offense as the later federal prosecution, has rejected the contention that the state arrest triggers the Sixth Amendment speedy trial right. *United States v. Mejias, supra.* Significantly, the *Mejias* case involved facts almost identical to ours: state/federal cooperation in a narcotics conspiracy. As I read the *Mejias* opinion, it relied for its constitutional conclusion on the dual sovereignty theory developed in the double jeopardy cases discussed above.

In an appropriate factual context, a strong argument can be made for the proposition that the Sixth Amendment concept of an "accused" is broader than the double jeopardy concept of a "charge." Giving one of these guarantees greater breadth than the other is responsive to the perception that the guarantees are rooted in different areas of constitutional policy.[3] On the other hand, there is at least a seeming paradox in concluding that although a prior state trial would not put a defendant in jeopardy for purposes of barring a subsequent federal trial, it might deprive him of a speedy federal trial.

In the current setting, however, it is unnecessary to resolve the question. The controlling authority on the factors to be considered in determining a violation of the Sixth Amendment right is *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors are: length of delay, reason for the delay, defendant's assertion of his right, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2191. Even assuming *arguendo* the applicability of these more demanding requirements of the Sixth Amendment, I conclude that none of the defendants' speedy trial rights was violated by virtue of the delay between their state arrests and the filing of this indictment. As the Court said in *Wingo,* "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 U.S. at 531, 92 S.Ct. at 2192, and "[c]losely related to length of delay is the reason the government assigns to justify the delay." *Id.* Here, the delay has been substantial— three years—but the reason for the delay is manifest: the development of a complex conspiracy charge involving twelve defendants, two major urban centers, and two countries. And there is no suggestion of intentional or even negligent dilatoriness by the prosecutors. The third factor—assertion of the speedy trial right—does not apply where, as here, the defendants were not

---

**3.** As Judge Newcomer said in *United States v. Small,* 345 F.Supp. 1246, 1249 (E.D.Pa.1972):

The scope and the purpose of the right to speedy trial are different from those of the prohibition against double jeopardy and the concept of an "accused" for Sixth Amendment purposes is clearly broader than the narrow and technical concept of a "charge" for purposes of the prohibition against double jeopardy.

In that case, the question was whether the Sixth Amendment right attached at the time the Navy transferred defendant from Vietnam and appointed defense counsel, prepared draft charges and appointed a prosecutor and judge, rather than when, many months later—after the military dropped its charges against him— defendant was indicted by a federal grand jury.

subject to any formal charges for most of the time period. Finally, I do not think that defendants have made a showing of real prejudice. (1) Only one—Holman—was incarcerated for any significant length of time as a result of the federal charges, and he is now free on bail. (2) It is true that the defendants have been subject to the anxiety of not knowing whether they would be charged by the federal government for the offenses alleged earlier by the state, but nothing in the record suggests anxiety of the scope and intensity present in *United States v. Dreyer,* 533 F.2d 112, 114–17 (3d Cir. 1976). (3) In some circumstances, a long delay may significantly impair counsel's efforts to represent a litigant properly at trial. But in this instance defendants have not demonstrated any concrete disadvantage.

■ As noted before, the defendants have also made an alternative argument, rooted in due process. But if, as I have determined, the Sixth Amendment claim fails, the due process claim fails *a fortiori.* Compare *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) with *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

## (II) *BILL OF PARTICULARS*

Seven defendants have filed motions seeking bills of particulars. The Government argues that the requests are either sufficiently answered in the indictment or seek information beyond the scope of a bill of particulars.

■ In evaluating these motions, I am guided by the instruction of the Court of Appeals that the purpose of a bill of particulars is "to inform the defendant of the nature of the charges against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio,* 451 F.2d 49, 63–64 (3d Cir. 1972), *cert. den.* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (quoting *United States v. Tucker,* 262 F.Supp. 305, 308 (S.D.N.Y. 1966)). See generally *United States v.*

*Smith,* 16 F.R.D. 372, 374–75 (W.D.Mo.1954) (Whittaker, J.) (quoted with approval by Advisory Committee Note to Rule 7(f)); Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth,* 1963 Wash.U. L.Q. 279. At the same time, a defendant is entitled neither to a wholesale discovery of the Government's evidence nor to a list of the Government's prospective witnesses. *Addonizio,* 451 F.2d at 64. Ultimately, the granting of a bill remains a discretionary matter with the trial court. *Id.*

■ With these principles in mind, I will grant defendants' motions to the following extent: The Government will be directed to disclose: (1) the exact date and place, if known to the Government, of each event alleged in the indictment for which such information has not yet been given; and (2) the names of all co-conspirators or participants in the alleged offenses known to the Government and their addresses at the time of their alleged participation, except insofar as the Government can show, *in camera,* that such disclosures might endanger the safety of prospective witnesses.

■ The defendants also seek disclosure of the basis for the allegation on page two of the indictment that it was an object of the conspiracy to violate 21 U.S.C. §§ 812, 814(a)(1) and 841(b)(1)(A). Inasmuch as Section 812 is simply a schedule of controlled substances, Section 841(b)(1)(A) is a sentencing provision, and Section 814(a)(1) does not appear in any edition of the United States Code which has been brought to my attention, I too am uncertain what the grand jury had in mind in this portion of the indictment. I will direct the Government to explain its understanding of the indictment, and, if necessary, to propose an appropriate amendment of the indictment.

## (III) *ASSORTED DISCOVERY MOTIONS*

(A) Motion for Retention and Preservation of Rough Notes.

■ Defendants Figueroa and William Quinones have moved to require the Government to produce rough notes made

during or after its interrogation of prospective Government witnesses. The Government has responded that it

will retain and preserve rough notes made during or after the questioning of Government trial witnesses that relate to the statement given by that witness during questioning. Any notes considered by the Government to be Jencks material will be delivered to the defendant at the appropriate time. Such notes considered by the Government not to be Jencks material will be delivered to the Court for *in camera* inspection as required by 18 U.S.C. § 3500.

I consider this response legally sufficient. I would, however, urge the Government to turn over any statements of witnesses in its possession in advance of trial to avoid delay during the trial. *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); *United States v. Goldberg*, 336 F.Supp. 1, 2 (E.D.Pa.1971). The defendants' motions will be dismissed as moot.

(B) Motion to Disclose Favorable Evidence.

■■■ Defendants Figueroa and William Quinones ask that the Government be directed to disclose all evidence favorable to defendants. The Government responds that it will provide this material at trial. I view this response also as legally sufficient. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Again, I urge the Government to disclose any *Brady* material in advance of trial to avoid unnecessary delay. The motions will be denied.

(C) Motion for Disclosure of Grand Jury Material.

■■■ Defendants Figueroa and William Quinones seek disclosure of the grand jury minutes in this case. The Government responds that defendants have not satisfied the particularized need requirement of F.R. Crim.P. § 6(e), and that the disclosure of the grand jury testimony of a trial witness cannot be required prior to trial under the Jencks Act. 18 U.S.C. § 3500. I agree with both of these Government contentions and will deny the motions for disclosure. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399–401, 79 S.Ct. 1237, 1240–1241, 3 L.Ed.2d 1323 (1959); *United States v. Murphy*, 569 F.2d 771, 773–74 (3d Cir. 1978), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807; 18 U.S.C. § 3500. In the alternative, however, the defendants request me to review the grand jury minutes *in camera* to determine the legal sufficiency of the evidence before the grand jury. I will, therefore, direct the Government to produce the grand jury transcript for *in camera* inspection to determine the sufficiency of the evidence presented to the grand jury as it relates to each of the defendants.

(IV) *MOTIONS FOR SEVERANCE*

■■■ Defendants William Quinones, Figueroa, Hutchinson and Holman have moved for severances under Federal Rules of Criminal Procedure 8 and 14.

(A) Rule 8 provides that:

*Joinder of Offenses and of Defendants*

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or, in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

(1) Quinones and Figueroa claim that:

[t]he offenses alleged relating to separate and distinct sales and/or distribution of heroin are not of the same or similar character or based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme and plan in violation of Rule 8(a).

This claim is frivolous. Each of the offenses charged in Counts 1–12 is a drug charge and Count 1 makes it quite clear that all of the offenses charged constitute parts of an alleged common scheme or plan.

(2) All movants claim misjoinder under § 8(b) in that either they are "not alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" or "the indictment does not allege that all such offenses arose out of the same transaction . . . or . . . one defendant is charged with an additional offense which is unrelated to the offenses charged against the other defendants." These claims are also frivolous: All of the defendants are charged in Count 1 with a common conspiracy. The Third Circuit has made it clear that the allegation of a conspiracy, so long as it is made in good faith, satisfies the mandate of Rule 8(b).

A Rule 8(b) motion is addressed to the pleadings, and not to the proof subsequently adduced. Provided that the indictment charges that the offenses joined constitute a single series of acts or transactions, severance will not be required. The allegation of a conspiracy in the instant case satisfies this mandate. As Professor Wright explains:

> [J]oinder is permitted of a conspiracy count and substantive counts arising out of the conspiracy, *since the claim of conspiracy provides a common link*, and demonstrates the existence of a common scheme or plan. (Emphasis added).

Wright and Miller, *1 Federal Practice and Procedure*, § 144. See also *Gordon v. United States*, 438 F.2d 858, 878 (5th Cir.), *cert. denied, Crandall v. United States*, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971); *United States v. Bryant*, 364 F.2d 598, 603 (4th Cir. 1966). Thus, provided that the conspiracy charge is put forward in good faith, the combination of a conspiracy count with counts charging acts in furtherance of the conspiracy will survive attack under Rule 8(b). See *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971).

*United States v. Somers*, 496 F.2d 723, 729–30 (3d Cir. 1974), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58. In this connection, it should be noted that Rule 8(b) concludes with the sentence that "defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." Accordingly, defendants' Rule 8 motion should be rejected.

 (B) Rule 14 provides:

*Relief from Prejudicial Joinder.*

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

(1) Holman and Hutchinson allege that the Government will introduce tape recordings of conversations involving various co-defendants, but not involving movants, which may implicate them, and that this will deny them their rights of confrontation if the involved co-defendants do not testify. Assuming that this speculation about the Government's proof is accurate, this seems to be a question of co-conspiracy hearsay and not one that might justify a severance. But even making the further assumption that the conversations referred to are not admissible against the movants, it certainly seems premature to consider severing be-

cause of a speculative *Bruton* problem. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We do not yet know whether the Government will seek to introduce these tapes, or on what theory. Nor do we know that any *Bruton* problem could not be eliminated by effective redaction of the tapes. *United States v. DiGilio*, 538 F.2d 972, 981–83 (3d Cir. 1976), *cert. den.* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Belle*, 593 F.2d 487 (3d Cir. 1979) (en banc), *cert. den.* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 277; *United States v. Acavino*, 467 F.Supp. 284 (E.D.Pa.1979).

(2) Defendants Quinones and Figueroa assert a number of grounds for a Rule 14 severance.

(i) They assert that the admission of co-defendants' statements or confessions possibly incriminating movants may prejudice them if those co-defendants do not testify. This is the classic *Bruton* claim. But, for the reasons noted above, the claim is at this time a wholly speculative one.

 (ii) They assert that other (unspecified) evidence admissible against co-defendants will be inadmissible against movants and that the jury will not be able to disregard it as to them. The Third Circuit addressed this kind of argument in the *Kenny* case when it said:

the mere possibility that in a joint trial some evidence may be admitted against one defendant which is inadmissible against another is not in itself a sufficient reason for multiple trials growing out of a closely related series of transactions. The prospect that certain evidence will be admissible against one defendant but not against another is a feature of all joint trials. Fed.R.Crim.P. 8 recognizes that this is a possibility, and Rule 14 commits to the sound discretion of the trial court the balancing of the inconvenience to the Government and the judicial process of numerous separate trials against the inconvenience to the defendants of seeking appropriate limiting instructions. See, e. g., *United States v. Barber*, 442 F.2d 517, 529 (3d Cir. 1971),

*cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971).

*United States v. Kenny*, 462 F.2d 1205, 1218 (3d Cir. 1972), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176. See also *United States v. Acavino*, 467 F.Supp. at 289. Furthermore, in *United States v. Somers*, the court made clear that:

In this Circuit, a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party. See *United States v. DeLarosa*, 450 F.2d 1057, 1065 (3d Cir. 1971), *cert. denied Baskin v. United States*, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972). In the context of a Rule 14 application, we have declared that a ". . . [p]rimary consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *Id.*

496 F.2d at 730. This disposes of defendants' various other claims that there are dangers in this case that the jury "will transfer guilt" to them, or will "cumulate the evidence relating solely to the other ten named defendants to infer a criminal disposition on the part of . . . Quinones and . . . Figueroa," or will be confused by the evidence, or "will not be able to compartmentalize the substantial evidence against the other defendants." These are clearly hazards posed by a multi-defendant conspiracy trial. But they are hazards to be surmounted by the careful efforts of the prosecution, and of defense counsel, and of the court, at the trial.

 (iii) They assert that the Government's proof at trial "will more likely than not disclose multiple conspiracies even though the indictment charges a single conspiracy and, therefore, a joint trial . . . will result in a prejudicial variance." This seems wholly speculative and certainly is not a ground for severance now.

 (iv) They assert that these defendants have a defense "antagonistic to that of their co-defendants." But the assertion is not one that justifies severance:

a severance is not required merely because defendants have inconsistent interests; "it must be demonstrated that a conflict is so prejudicial that differences are irreconcilable, and 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty'." *United States v. Robinson*, 139 U.S.App. D.C. 286, 289, 432 F.2d 1348, 1351 (1970), quoting *Rhone v. United States*, 125 U.S. App.D.C. 47, 48, 365 F.2d 980, 981 (1966). Accord, *United States v. Samuels*, 374 F.Supp. 684, 686–87 (E.D.Pa.1974).

*United States v. Acavino*, 467 F.Supp. 284, 289 (E.D.Pa.1979).

▆▆ (v) Movants assert that (a) if they do not testify at trial, testifying co-defendants will be compelled to refer to movants' silence as evidence of their guilt, and (b) if movants do testify, they will be prejudiced if not permitted to comment on the silence of co-defendants. But the Third Circuit has elected not to follow *DeLuna v. United States*, 308 F.2d 140 (5th Cir. 1962), upon which the movants rely.

[W]e believe the better rule was stated by Chief Judge Hastings in *United States v. Kahn*, 381 F.2d 824, 840 (7th Cir. 1967):

The question as we see it is *how essential is it to a fair and complete defense, an attribute of a fair trial, that defendants be permitted to comment upon a co-defendant's exercise of his right against self-incrimination.* The procedural difficulties and the complication of joint trials arising from the rule suggested by dicta in DeLuna are so great that we cannot say there is an absolute right, without reference to the circumstances of defense at trial, for a defendant to comment on the refusal of a co-defendant to testify. We think there must be more to justify the disintegration of a trial, such as a conspiracy trial, in which there is a cohesion of crime alleged, defendants charged, and proof adduced. *There must be a showing that real prejudice will result from the defendant's inability to comment.* (Emphasis supplied)

The court further observed that, while there was some inconsistency between the defenses at trial, "the degree of antagonism * * * [was] not as great as that in *DeLuna* where the defenses were mutually exclusive." The court therefore held that, since the testimony "did not present the jury the dilemma of mutually exclusive defenses, with no evidentiary basis for judgment between them, in which a comment on the failure to testify would indicate which horn of the dilemma should be seized * * *," the defendants in question suffered no prejudice from their inability to comment upon their co-defendant's failure to testify. *Kahn*, at 841.

*United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir. 1971), *cert. denied* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), rehearing denied 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591. See also *United States v. Somers*, 496 F.2d at 731. Since there is, in this Circuit, no absolute right to comment on co-defendants' silence, and since the test is whether there will be "real prejudice" (or whether there is "mutual exclusivity among the defenses,") the decision whether severance is required must await trial. Accordingly, all outstanding motions to sever will be denied.

## ON RECONSIDERATION

▆▆ After reconsidering my opinion and order, filed in this case on February 5, 1980, insofar as they directed the Government to deliver the grand jury transcript to me for *in camera* inspection, I have concluded that such an inspection would be inappropriate on the mere allegation that the evidence presented to the grand jury was "insufficient." As the Supreme Court held in *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), indictments are not open to challenge "on the ground that there was inadequate or incompetent evidence before the grand jury." By contrast, an allegation that there was "bias or prejudice in an indictment" or that there was "no substantial or rationally persuasive evidence" before the grand jury might warrant such an inspection, *Costello*, 350 U.S.

at 364, 76 S.Ct. at 409 (Burton, J., concurring), provided that the allegation appeared to be rooted in something more than conclusory rhetoric. Accordingly, that part of my order of February 5, 1980, directing the Government to deliver the grand jury transcript to me for *in camera* inspection is, this 1st day of March, 1980, hereby VACATED.