# United States Court of Appeals
## For the First Circuit

No. 15-1550

UNITED STATES OF AMERICA,

Appellee,

v.

EFRÉN IRIZARRY-COLÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Linda A. Backiel, with whom Efrén Irizarry-Colón, pro
se, was on brief, for appellant.
Juan Carlos Reyes-Ramos, Assistant United States
Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States
Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney,
Chief, Appellate Division, were on brief, for appellee.

February 8, 2017

**KAYATTA**, **Circuit Judge**.  The defendant, Efrén Irizarry-Colón, pled guilty to participating in a conspiracy to defraud the federal government in violation of 18 U.S.C. § 371.  His plea agreement reserved his right to appeal the district court's denial of his motion to dismiss the indictment with prejudice based on violations of the Speedy Trial Act, the Speedy Trial Clause of the Sixth Amendment, and the Due Process Clause of the Fifth Amendment.  For the following reasons, we find that the district court was misled by dicta in one of our prior opinions in calculating the length of delay relevant to evaluating the alleged Sixth Amendment violation.  Consequently, we vacate the district court's denial of Irizarry's Sixth Amendment claim and remand for reconsideration of that claim.  In all other respects, we affirm.

## I.  Background

Irizarry was a closing agent for the Farm Service Agency (FSA) and an "attorney for emergency and operating loans disbursed to farmers" after Hurricane Georges struck Puerto Rico in 1998.  Between September 1998 and September 2000, Irizarry participated in a conspiracy to defraud the FSA.  In the words of the version of the facts incorporated into the plea agreement:

> The essence of the conspiracy to defraud involved the filing of applications for emergency loans for farmers through the FSA . . . .  The applications would contain false information and would also be accompanied by false documentation.  The defendant . . . would not timely present the mortgages for recording at the Property Registrar, at the time of the disbursement of the loans,

contrary to his obligations as closing agent, thereby deceiving FSA into believing that the loan had not yet closed, and as a mechanism to delay the collection of payments by the FSA from the particular Farmers.

The government first indicted Irizarry on July 28, 2005. This indictment contained thirty-seven counts. Count one charged that Irizarry participated in a conspiracy to defraud the government in violation of 18 U.S.C. § 371. The other thirty-six counts charged various specific instances of false statements concerning the presentation of mortgage deeds in favor of FSA to the registry of deeds, in violation of 18 U.S.C. § 1006, or furnishing the government with false information (or failing to disclose relevant information) in connection with the loans, in violation of 18 U.S.C. § 1014. The indictment also sought forfeiture.

On March 13, 2007, the court dismissed the indictment pursuant to Federal Rule of Criminal Procedure 48(b) for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-3162, on Irizarry's motion. The district court found that 294 nonexcludable days had passed between the indictment and the first tolling of the Speedy Trial Act clock. See United States v. Irizarry Colón, 477 F. Supp. 2d 419, 421-22 (D.P.R. 2007). The district court also concluded that there had been no bad faith on the part of the government in allowing that time to elapse, that the parties were "immediately ready to go to trial," and that Irizarry could have sought

dismissal of the indictment much earlier "but waited to do so." Id. at 423. For those reasons, the district court elected to dismiss the indictment without prejudice. Id. at 422-23. Irizarry did not appeal that order.

The government indicted Irizarry again on April 4, 2007. The second indictment charged thirty-five of the thirty-seven counts in the first indictment as well as seven new counts charging bank fraud, in violation of 18 U.S.C. § 1344.

On August 10, 2009, and again on Irizarry's motion, the court dismissed the second indictment pursuant to Rule 48(b) for violation of the Speedy Trial Act. The district court found that "approximately 140 or 148" nonexcludable days had passed since the indictment. This time, the court found that the parties had agreed to begin the trial on a date after the Speedy Trial Act clock expired and that, when setting this date, the court had failed to make any findings as to tolling. The court found that the parties had acted "in good faith" and that defense counsel's acquiescence to the late trial date "weighs heavily in favor of the without prejudice [dismissal]." Accordingly, the district court once again elected to dismiss the indictment without prejudice. Irizarry also did not appeal that order.

The government indicted Irizarry for a third time on January 27, 2010. The third indictment charged the same counts as

the second but with the bank fraud counts removed (leaving thirty-five counts and a request for forfeiture).

On May 12, 2010, Irizarry moved to dismiss the third indictment on the ground that ninety nonexcludable days had passed and that he had been prejudiced by the cumulative delay up to that point. His motion sought to take advantage of a recent Supreme Court decision, Bloate v. United States, 559 U.S. 196 (2010), that had abrogated a prior rule in this circuit that automatically excluded time for the parties to prepare pretrial motions from the Speedy Trial Act clock. See United States v. Huete-Sandoval, 668 F.3d 1, 4 (1st Cir. 2011) (recognizing abrogation). The district court dismissed the indictment, again without prejudice to refiling. We discuss the precise details of how it did so in Section II of this Opinion. Irizarry did not appeal that order.

The government indicted Irizarry for the fourth and final time on June 17, 2011. The indictment was identical to the third indictment.

On August 25, 2011, Irizarry filed a motion to dismiss the fourth indictment for violation of the Speedy Trial Act and the Fifth and Sixth Amendments to the United States Constitution. On October 18, 2011, the district court denied the motion. See United States v. Irizarry-Colón, 820 F. Supp. 2d 306, 317 (D.P.R. 2011). On October 22, 2014, Irizarry entered a conditional guilty plea to count one, reserving his right to bring this appeal as to

the denial of his motion to dismiss.  On April 9, 2015, he was sentenced to time served, one year of supervised release, $50,000 in restitution, and a special monetary assessment.  On the government's request, the remaining counts were dismissed.  This appeal followed.

## II.  Discussion

Irizarry argues that his fourth indictment should have been dismissed because the government violated the Speedy Trial Act, his Sixth Amendment right to a speedy trial, and his Fifth Amendment right to due process.  We address each argument in turn.

## A.  Speedy Trial Act

"This circuit reviews a denial of a statutory speedy trial claim de novo as to legal rulings, and for clear error as to factual findings."  United States v. Carpenter, 781 F.3d 599, 616 (1st Cir.), cert. denied, 136 S. Ct. 196 (2015).  Applying this standard of review, we affirm the district court's application of the Speedy Trial Act.

In the event that a defendant pleads not guilty, the Speedy Trial Act requires that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18

U.S.C. § 3161(c)(1). This Speedy Trial Act clock runs from the indictment or appearance until the beginning of defendant's trial, unless some other provision of the Speedy Trial Act resets or pauses it.

The Speedy Trial Act issue raised on this appeal is whether the seventy-day clock limiting the time between indictment or appearance and trial reset to zero after dismissal of the third indictment. If so, the district court properly rejected Irizarry's motion to dismiss the fourth indictment under the Act. If not, Irizarry was entitled to a fourth dismissal because any prosecution on the subject of the third indictment would have necessarily violated the Act on the day the defendant first appeared in court.[1]

The rules that govern resolution of this issue are well understood. Relying on the express language of 18 U.S.C. § 3161(d)(1)[2] and § 3161(h),[3] on the plain negative inferences

---

[1] He first appeared in court after the indictment was filed.

[2] This statute reads, in relevant part: "If any indictment or information is dismissed upon motion of the defendant . . . and thereafter . . . an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsection[] . . . (c) of this section shall be applicable with respect to such subsequent . . . indictment, or information, as the case may be." Id. § 3161(d)(1).

[3] This statute reads, in relevant part: "If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as

drawn from that language, and on "common sense," United States v. Myers, 666 F.3d 402, 404 (6th Cir. 2012), courts differentiate between cases dismissed at a defendant's behest and those dismissed by motion of the government. When an indictment is dismissed on a defendant's motion, the clock resets, but when it is dismissed on the government's motion, it merely pauses until a new indictment is filed. See United States v. Rojas-Contraras, 474 U.S. 231, 239 (1985) (Blackmun, J., concurring in the judgment); Myers, 666 F.3d at 405 (collecting cases); cf. United States v. Colombo, 852 F.2d 19, 23-24 (1st Cir. 1988) (acknowledging this distinction in dicta); United States v. Krynicki, 689 F.2d 289, 292-93 (1st Cir. 1982) (reaching similar conclusion with regard to thirty-day period between arrest or service with summons and indictment).

The parties agree on the basic facts to which we apply these rules. When the court dismissed the third indictment, ninety nonexcludable days had passed since Irizarry's first appearance before a judicial officer without commencement of trial. Hence, the district court was required to dismiss the case upon Irizarry's request, leaving open only the question as to whether the dismissal was with or without prejudice to reindictment. 18 U.S.C. § 3162(a)(2). Irizarry made such a request and filed a memorandum

---

to the subsequent charge had there been no previous charge," id. § 3161(h)(5), is "excluded in computing the time within which . . . the trial of any such offense must commence," id. § 3161(h).

asking that the dismissal be with prejudice. The government filed a responsive brief in which it contended that the factors listed in 18 U.S.C. § 3162(a)(2), as well as additional miscellaneous factors that this court has found relevant in Speedy Trial Act cases, see United States v. Barnes, 159 F.3d 4, 16 (1st Cir. 1998), required that the dismissal be without prejudice. The magistrate judge concluded that the indictment "must be dismissed," but recommended that it "be dismissed without prejudice." Irizarry objected to this Report and Recommendation both because it concluded that the dismissal under the Speedy Trial Act should be without prejudice and because of the magistrate judge's "failure to find that the government . . . affirmatively moved for dismissal of the indictment" under Rule 48(a). The district court then issued an order stating that the magistrate judge's "Report and Recommendation is APPROVED and ADOPTED in its entirety," that "defendant's Motion to Dismiss Indictment With Prejudice . . . is DENIED," and that "the United States' request contained in its response . . . for a dismissal of the indictment without prejudice is GRANTED." The clerk issued a form Judgment of Discharge, on which the deputy clerk (who signed the form) checked the box indicating that "[t]he Court has granted the motion of the government for dismissal pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure," rather than the box indicating that "[t]he Court has dismissed the charges for unnecessary delay,

pursuant to Rule 48(b)." As described above, the government then filed a fourth indictment. Without including the nonexcludable days that passed during the pendency of the third indictment, only forty-five nonexcludable days passed between the filing of the fourth indictment and the filing of the motion to dismiss that is the subject of this appeal. See Irizarry-Colón, 820 F. Supp. 2d at 312. On all this, the parties agree.

The pivotal question is whether the third indictment was dismissed at the defendant's behest or at the government's. To answer this question, both parties urge us to review as a whole the record and docket in the third proceeding. Irizarry makes no argument that we must limit our inquiry to the face of the form Judgment of Discharge.[4] Instead, Irizarry points to the Judgment, the court's order, the magistrate judge's Report and Recommendation, and the government's memoranda--all in the proceedings under the third indictment--as collectively revealing that the dismissal of that indictment was at the government's behest. Like the district court, we disagree.

The entire effort to dismiss the third indictment began with a motion filed by Irizarry. That motion sought dismissal with prejudice. On the record as it then stood, Irizarry was

_____

[4] Presumably, he decided that such an argument, had he made it in the district court, might well have led the prosecution to seek a correction under Federal Rule of Criminal Procedure 32.

entitled to dismissal by right. As the magistrate judge recognized, "the parties agree, the indictment . . . must be dismissed; the question remaining is whether to dismiss with or without prejudice." In short, the only issue that was disputed and required adjudication was whether the dismissal would be with prejudice. The briefing, argument, and analysis then trained on that question, which the magistrate judge and then the district court expressly resolved against Irizarry, stating explicitly that dismissal was without prejudice.

Read in the context of this plain record, the references to the government requesting dismissal without prejudice, or the district court "grant[ing]" the government's request, were references not to a government motion to dismiss--there was no such motion, as dismissal was a done deal--but rather to its request that the dismissal be without prejudice. At no point in the proceeding did Irizarry argue that the indictment should not be dismissed unless it was dismissed with prejudice. And when he objected to the magistrate judge's recommendation, he objected not to dismissal itself, but to the decision to dismiss the indictment without prejudice on Rule 48(b) grounds. In fact, his objection clearly recognized that the magistrate judge did not find that the government's request for dismissal without prejudice amounted to a motion under Rule 48(a), and he argued that this was error.

To construe the record otherwise would defy common sense. Under Irizarry's revamped view, the government moved to dismiss the third indictment after the running of seventy nonexcludable days. Thus, the Speedy Trial Act clock would not have reset--because it would only do so on a motion by Irizarry-- and a fourth indictment would have been timed-out at the outset, cf. Myers, 666 F.3d at 404, and so subject to dismissal at any point Irizarry chose. Only if that fourth indictment was then dismissed without prejudice could the government bring a hypothetical fifth indictment with a reset clock.

It is unlikely that a prosecutor would take the obviously self-defeating step of moving to dismiss an indictment after seventy nonexcludable days, particularly where the defendant has already filed a motion to dismiss. We do not read the record to suggest that this prosecutor did so. Rather, the government conceded a clear fact--that the Speedy Trial Act clock had run on the third indictment--but disputed Irizarry's contention that the indictment should be dismissed with prejudice. The government could properly argue against dismissal with prejudice in its opposition to Irizarry's motion without implicitly converting that opposition into a motion to dismiss, and it did so. Therefore, the district court did not err in treating the dismissal of the third indictment as a dismissal on the defendant's motion that reset the Speedy Trial Act clock. It follows that the denial of

- 12 -

the motion to dismiss the fourth indictment forty-five nonexcludable days after it was filed was correct.

## B. Sixth Amendment Right to a Speedy Trial

The Sixth Amendment to the United States Constitution also protects a defendant's interest in having a speedy trial, and it does so in a manner that does not necessarily track that of the more mechanistic statutory rules set forth in the Speedy Trial Act. The Supreme Court has identified four factors that courts should assess when considering whether a defendant has been deprived of the right to a speedy trial. These are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972).

The first factor--the length of delay--"is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . ." Dogget v. United States, 505 U.S. 647, 651-52 (1992). "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id.; see also United States v. Souza, 749 F.3d 74, 81 (1st Cir.), cert. denied, 135 S. Ct. 418 (2014). "There is no bright-line time limit dividing the lengths

- 13 -

that trigger further Barker inquiry from those that do not. Whether a particular delay will warrant further speedy trial scrutiny 'is necessarily dependent upon the peculiar circumstances of the case.'" United States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010) (quoting Barker, 407 U.S. at 530-31). However, "[d]elay of around one year is considered presumptively prejudicial, and the presumption that delay prejudices the defendant 'intensifies over time.'" United States v. Carpenter, 781 F.3d 599, 610 (quoting Doggett, 505 U.S. at 652); see also Doggett, 505 U.S. at 652 n.1.

The dispute in this case concerns how a court should measure the length of delay under the first Barker factor. Irizarry argues that the court should consider the delay across all four indictments, and not just the sixty-nine days that had passed between when the government filed the fourth indictment and when he filed his motion to dismiss. The district court ruled, and the government argues on appeal, that the court should consider only the sixty-nine-day delay after the fourth indictment was filed. Both parties agree that if the length of delay is measured across all four indictments, it was presumptively prejudicial and therefore triggers the full Barker analysis.

The parties also disagree about the appropriate standard of review. This circuit generally reviews district court rulings on speedy trial motions for abuse of discretion. Carpenter, 781

- 14 -

F.3d at 607; United States v. Salimonu, 182 F.3d 63, 69 (1st Cir. 1999); United States v. Santiago-Becerril, 130 F.3d 11, 21 (1st Cir. 1997); United States v. Colombo, 852 F.2d 19, 21 (1st Cir. 1988). We noted in Carpenter, however, that applying an abuse of discretion standard of review to constitutional speedy trial claims is in tension with the rules of other circuits, as well as this circuit's standard of review when considering other similar issues (e.g., applying the Speedy Trial Act or the Eighth Amendment). 781 F.3d at 607-08. Carpenter did not resolve this tension because the defendant's claims failed under any standard of review. We need not resolve it in this case, either. Rather, for reasons we will explain, we find that the district court committed a type of error--applying an incorrect legal interpretation of the first Barker factor--that must be set aside even under an abuse of discretion test. See United States v. Bater, 594 F.3d 51, 54 n.1 (1st Cir. 2010) ("Although suggesting great latitude, 'abuse of discretion' has this meaning only where the issue invites it--usually in applying a general standard to specific facts (the test being essentially one of reasonableness); but (confusingly) 'abuse of discretion' is used as well to embrace mistakes on abstract issues of law (reviewed de novo) and errors of fact (for which clear error is the customary test)." (citing Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 132 (1st Cir. 2005))).

The district court was led astray by our statement in Colombo that it "makes sense" that "[t]he courts have implicitly assumed that if an indictment is dismissed on motion of a defendant, and the defendant is subsequently reindicted for the same offense, only the delay in prosecution of the second indictment is relevant for Sixth Amendment speedy trial purposes." 852 F.2d at 23 (citations omitted). That statement was plainly dicta, as the holding of Colombo concerned an indictment dismissed on the motion of the government (and concluded, in that instance, that the time elapsed under prior indictments is included). See id. at 23–24.[5]

Instead, this case is controlled by United States v. Loud Hawk, 474 U.S. 302 (1986), which both the Colombo dicta and the district court's application of that dicta contradict. There, the Court treated the entire ninety-month period[6] between the initial indictment and the dismissal just prior to trial as the period of delay under the first factor, triggering the full Barker

---

[5] The district court also relied on United States v. MacDonald, 456 U.S. 1 (1981). MacDonald held only that when charges are dropped on a first indictment, "the speedy trial guarantee is no longer applicable" until a second indictment is filed. Id. at 8. This holding has no bearing on how a court should calculate the length of delay for the first Barker factor.

[6] The ninety-month period used by the Supreme Court in its analysis of the first Barker factor spanned from the initial indictment on November 25, 1975 to the order dismissing the indictment on May 20, 1983, which the Supreme Court was reviewing. Id. at 304-10.

- 16 -

analysis. See id. at 304, 314. This ninety-month period included both periods during which the defendants were "neither under indictment nor subject to any restraint on their liberty," id. at 310, and periods during which either the government or the defendants were pursuing interlocutory appeals, id. at 312-14, 316-17. In applying the second Barker factor, the Court gave periods of the first type no weight under United States v. MacDonald, 456 U.S. 1, 8-9 (1981), and periods of the second type no weight under a new rule announced in Loud Hawk itself. See Loud Hawk, 474 U.S. at 310-12, 314-16. The Court did so despite the fact that, after a series of appeals and remands, some of the counts against the defendant had been dismissed without prejudice on the defendant's motion pursuant to Rule 48(b), and the government had subsequently obtained a superseding indictment. See United States v. Loud Hawk, 564 F. Supp. 691, 695 (D. Or. 1983) (recounting procedural history); United States v. Loud Hawk, 628 F.2d 1139, 1151 (9th Cir. 1979) (reversing dismissal of those counts insofar as they were with prejudice).

In a recent unpublished decision reviewing a California state court case with a similar procedural history to this one, the Ninth Circuit held that Loud Hawk constituted clearly established federal law that the period of delay under the first Barker factor included the entire period from initial indictment to trial. See Carreon v. Long, 612 F. App'x 877, 878 (9th Cir.

- 17 -

2015) ("[M]easur[ing] the delay as the time between the second felony complaint and [the defendant's] trial . . . was 'an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States.'" (citing 28 U.S.C. § 2254(d)(1) and Loud Hawk, 474 U.S. at 314)); People v. Carreon, No. E052856, 2012 WL 5992736, at *2 (Cal. Ct. App. Nov. 29, 2012) (recounting that the first felony complaint was dismissed without prejudice because of a violation of the statutory right to a speedy trial after the defendant sought a "writ of mandate," and that after the writ issued, "the district attorney immediately filed a new felony complaint"); see also United States v. Sears, Roebuck & Co., 877 F.2d 734, 739 (9th Cir. 1989) (noting that for the first Barker factor, "[t]he delay is measured from the time of the indictment to the time of trial, excluding periods during which the indictment is dismissed").

While one might correctly argue that the Supreme Court in Loud Hawk did not expressly rule that the manner in which it measured the length of the delay was proper, such an argument would provide a poor justification for a lower court to proceed otherwise. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991) ("[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings."). Instead, like the Ninth Circuit did in Carreon, we conclude that the district court should count the

- 18 -

entire period of time since the first indictment when calculating the length of delay for the first Barker factor.

Because the district court's opinion turned entirely on the first factor, it made no findings regarding what portion of the longer period of delay was attributable to the government, whether Irizarry promptly asserted his speedy trial rights, or whether Irizarry was prejudiced. It engaged in no weighing of these factors against each other. Because we review factual findings and judgmental weighings for abuse of discretion, see Colombo, 852 F.2d at 21, we decline to make them ourselves in the first instance as an alternative basis for affirmance. Rather, we remand the case to the district court for proper application of all four Barker factors.

## C.  Pre-Indictment Delay

Next, Irizarry argues that the delay before the first indictment violated his right to due process.[7] Reviewing the district court's decision not to dismiss the indictment on this ground for abuse of discretion, United States v. Bater, 594 F.3d 51, 53 (1st Cir. 2010), we reject that argument.

---

[7] He also argued that if the Sixth Amendment analysis did not include time prior to the fourth indictment, then he should be entitled to argue that the total delay before the fourth indictment violated his due process rights. Since we have agreed with him about the Sixth Amendment, we do not consider this alternative argument.

Even when an indictment is brought within the statute of limitations, "excessive pre-indictment delay can sometimes, albeit rarely, violate the Fifth Amendment's Due Process Clause if the defendant shows both that the 'delay caused substantial prejudice to his right to a fair trial' and that 'the [g]overnment intentionally delayed indictment . . . to gain a tactical advantage.'" Id. at 54 (alterations in original) (quoting United States v. Picciandra, 788 F.2d 39, 42 (1st Cir. 1986)). "With respect to prejudice, a defendant must do more than allege that witnesses' memories had faded or that evidence had been lost that might have been helpful to him." United States v. Muñoz-Franco, 487 F.3d 25, 58 (1st Cir. 2007). With respect to intentional delay for tactical reasons, this court has indicated that such delay violates the Due Process Clause when it is the product of "'bad faith' reasons." United States v. Crooks, 766 F.2d 7, 11 (1st Cir. 1985). For instance, pre-indictment delay for the purpose of investigation, see United States v. Lovasco, 431 U.S. 783, 790–92, 795–96 (1977), for the purpose of discovering all the participants in a conspiracy so they could be tried together, see id., and for the purpose of letting state authorities pursue their own prosecution, see United States v. Marler, 756 F.2d 206, 214–15 (1st Cir. 1985), is permissible. Delay in order to deprive the defendant of witnesses, see Bater, 594 F.3d at 54, or impose the burden of defending oneself in back-to-back trials, see United

States v. Ramos-González, 775 F.3d 483, 491 (1st Cir. 2015), may not be.

Irizarry cannot show substantial prejudice.[8] He argues that he was prejudiced in two ways. First, he claims that he was "forced . . . to deplete his financial resources" so that "his defense would be no match for [the government's] team of prosecutors, investigators and co-operators." Even assuming that this is the type of prejudice that could ground a due process claim, Irizarry does not cite anything in the record establishing his financial position immediately after the conspiracy or at the time of the first indictment. Second, he asserts that the prosecution's decision to indict him after it had already indicted and reached plea agreements with several potential codefendants deprived him of witnesses on his behalf. He does not, however, cite anything in the record to explain why individuals who had already pled guilty would be prevented from testifying at his trial or to establish what testimony those individuals would have offered otherwise.

---

[8] Irizarry made a similar due process argument in his motions to dismiss the first indictment and the third indictment, but he elected not to appeal either dismissal without prejudice. Cf. United States v. Worthy, 772 F.3d 42, 46-48 (1st Cir. 2014) (noting that the decision to dismiss with prejudice rather than without is appealable). The government does not argue that Irizarry has thereby forfeited the opportunity to raise this issue in the present appeal. Expressing no opinion as to whether such an argument would be successful, we consider the merits of Irizarry's due process argument.

Irizarry also may not be able to show an intentional delay for improper reasons. He argues that it was improper for the government to indict his co-conspirators first and strike plea deals with many of them so that they could testify against him. The Supreme Court has indicated that tactical decisions of this sort may be permissible reasons to delay trial under the Sixth Amendment. See Barker, 407 U.S. at 534 (noting that, under the Sixth Amendment, "[p]erhaps some delay would have been permissible under ordinary circumstances, so that [a co-conspirator] could be utilized as a witness in [the defendant's] trial"). If the Constitution permits some delay to try a co-conspirator after indictment, it would be difficult to show that a delay for the same reason before indictment was in bad faith. Ultimately, we need not decide this issue, as Irizarry's due process claim falters on the substantial prejudice prong.

## III.  Conclusion

We vacate the district court's decision on Irizarry's Sixth Amendment claim and remand for the district court to apply the full Barker analysis in analyzing that claim. If the district court concludes that Irizarry's Sixth Amendment rights were violated, it should vacate his conviction and sentence and grant appropriate relief. Otherwise, it should reaffirm the conviction and sentence. We affirm the district court's decision in all other respects.