# United States Court of Appeals
## For the First Circuit

No. 17-1961

UNITED STATES OF AMERICA,

Appellant,

v.

RAMAN HANDA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Selya, and Lynch,
Circuit Judges.

Alexia R. De Vincentis, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellant.
Martin G. Weinberg, with whom Kimberly Homan was on brief, for appellee.

June 8, 2018

**LYNCH**, **Circuit Judge**.  In this case, we affirm dismissal of the added charge in a superseding indictment on Sixth Amendment speedy trial grounds.  On the facts of this case, we hold that the constitutional speedy trial clock starts to run from the date of the original indictment, rejecting the government's assertion that it runs from the date of the charge first brought in the superseding indictment.  We also reject, on the facts presented, the government's contention that the Double Jeopardy Clause and the Due Process Clause are the only constitutional constraints as to when it may file a superseding indictment that adds an additional charge, and the Sixth Amendment plays no role.

## I. Background

### A.  Facts

We draw the facts from the district court's findings, which we accept unless they are clearly erroneous.  See United States v. Moreno, 789 F.3d 72, 78 (2d Cir. 2015) (citing Doggett v. United States, 505 U.S. 647, 652-53 (1992); United States v. Ghailani, 733 F.3d 29, 43-44 (2d Cir. 2013)); United States v. Aviles-Sierra, 531 F.3d 123, 126 (1st Cir. 2008).

Handa co-owned and operated a luxury watch and jewelry business, Alpha Omega Jewelers ("Alpha Omega"), which ran into financial difficulties in 2007.  United States v. Handa (Handa I), 266 F. Supp. 3d 443, 445 (D. Mass. 2017).  In late 2007, Handa began to experience severe "stress, anxiety, depression, and sleep

deprivation." Id. at 446. He was admitted to the Lahey Clinic in December 2007 after his wife found him unresponsive at home. Id. Handa left the United States shortly thereafter, purportedly to seek medical treatment in India. Id.

In 2008, Alpha Omega filed for bankruptcy. Id. During Alpha Omega's bankruptcy proceedings in the District of Massachusetts, Handa was represented by Massachusetts attorney Edward J. Quinlan. Id. Also in 2008, Handa retained Edward McLaughlin, another Massachusetts attorney, to represent him in connection with the government's execution of a search warrant on Alpha Omega. Id. McLaughlin communicated with federal prosecutors to seek the return of Handa's personal belongings which were seized during the search. Id. None of Handa, Quinlan, or McLaughlin were informed that Handa had been charged in a criminal indictment in March 2011. Id. Nearly six years later, Handa was arrested on February 22, 2017, when he returned to the United States. Id. at 447.

Handa openly resided in India from December 2007 to March 2008. Id. at 446. He then stayed with his brother in England until sometime in 2010 or 2011, at which point he permanently relocated to India. Id. Handa retained his U.S. citizenship and passport at all times during his residence overseas. Id. Significantly, while living in India between 2012 and 2017, Handa had numerous interactions with U.S. government agencies: he used

- 3 -

his U.S. passport to access the U.S. embassy in New Delhi; renewed his U.S. passport using his Indian address; and applied for Social Security and Medicare benefits, which he began receiving in 2012 and 2014, respectively.  Id. at 447.

On March 3, 2011, unbeknownst to Handa, a federal grand jury had indicted him on twelve counts of wire fraud in violation of 18 U.S.C. § 1343.  Id. at 446.  The indictment alleged that Handa and others had made fraudulent inventory entries in Alpha Omega's computer system in order to inflate the company's borrowing base.  These entries were then allegedly incorporated into Alpha Omega's borrowing base certificates, which were used to obtain additional financing from the subsidiaries of two banks: Bank of America, N.A. and LaSalle Bank Midwest N.A.  Id.

In April 2011, government agents contacted Handa's daughter and "employed a ruse in an effort to learn of Handa's whereabouts."  Id.  Handa's daughter told the agents that Handa was spending time in Europe and India, and that they should contact Quinlan.  Id.  The agents did not tell Handa's daughter about her father's indictment.  Id.  Nor did they follow up with Quinlan to inquire about Handa's whereabouts or to inform Quinlan about Handa's indictment.  Id.

Instead, in August 2011, the government applied to the International Criminal Police Organization ("INTERPOL") for a Red Notice, which allows INTERPOL to send an alert to member countries

- 4 -

notifying them that the United States has issued an arrest warrant for an individual. Id. at 446-47. The Red Notice for Handa was issued on November 26, 2012. Id. at 447. The government took no further action until March 2014, when INTERPOL-Washington requested that INTERPOL-New Delhi check its databases to locate Handa. Id. INTERPOL-New Delhi responded that it could not locate Handa without Handa's Indian address and passport number. Id. INTERPOL-Washington never provided the requested information to INTERPOL-New Delhi.[1] Id.

On February 22, 2017, Handa traveled to Los Angeles, where he was arrested upon arrival. Id.

B. District Court Proceedings

Handa asserted his Sixth Amendment right to a speedy trial during his arraignment on March 16, 2017, id., and filed his motion to dismiss on speedy trial grounds on April 14, 2017.

On April 26, 2017, two days before its response to Handa's motion to dismiss was due, the government filed a superseding indictment. The superseding indictment contained the same twelve wire-fraud counts as the original March 2011 indictment; significantly, it added a new count for bank fraud in violation of 18 U.S.C. § 1344. The bank-fraud count alleged that

---

[1] It is undisputed that at least one department of the federal government was aware of Handa and had communicated with him at his Indian address. See Handa I, 266 F. Supp. 3d at 447.

Handa had defrauded "a federally-insured financial institution . . . by causing fraudulent borrowing base certificates to be submitted to LaSalle Bank Midwest, N.A. and Bank of America, N.A. in order to induce LaSalle and Bank of America to continue to extend Alpha Omega credit . . . ."

The government attempted to excuse the delay by saying that the bank-fraud charge was the product of a new investigation, which had managed to determine that Bank of America, N.A. and LaSalle Bank Midwest N.A. were federally insured, and thus were "financial institutions" under the bank-fraud statute. United States v. Handa (Handa II), 270 F. Supp. 3d 442, 443 n.2 (D. Mass. 2017). On May 8, 2017, the government filed its response to Handa's motion to dismiss the original indictment, to which Handa filed a reply.

The district court granted Handa's motion to dismiss the original indictment on July 19, 2017. Handa I, 266 F. Supp. 3d at 449. Applying the four-factor test from Barker v. Wingo, 407 U.S. 514 (1972), the district court first found that "the delay . . . of nearly six years create[d] a presumption of prejudice and justifie[d] further inquiry." Handa I, 266 F. Supp. 3d at 447. It then found that the delay resulted from the government's negligence, and that Handa had invoked his speedy trial right at the "earliest possible time"; both findings weighed in Handa's favor. Id. at 448. Finally, the district court rejected the

- 6 -

government's argument that the presumption of prejudice was rebutted by the government's assertion that the case would not "depend[] heavily on eyewitness memory of events that occurred in 2007," reasoning that at least some witness testimony would be required and that the nearly six-year post-indictment delay "surely contributed to fading memories." Id. at 449.

On July 20, 2017, Handa moved to dismiss the bank-fraud charge first introduced by the April 26, 2017 superseding indictment on Sixth Amendment speedy trial grounds, arguing that the entire period of time since the original indictment was the applicable measure for the length of delay under the first Barker factor. Handa also sought dismissal of the added bank-fraud charge under the Fifth Amendment, on grounds of prosecutorial vindictiveness and excessive pre-indictment delay. The government opposed Handa's motions to dismiss.

On September 11, 2017, the district court also dismissed the added bank-fraud count on Sixth Amendment speedy trial grounds, without reaching Handa's Fifth Amendment claims. Handa II, 270 F. Supp. 3d at 444-45. In doing so, the district court held that the speedy trial clock for the bank-fraud charge started ticking upon the return of the initial indictment in 2011. Id. at 445. It cited our decision in United States v. Irizarry-Colón, 848 F.3d 61 (1st Cir. 2017), and the Supreme Court's decision in United States v. Loud Hawk, 474 U.S. 302 (1986). See Handa II, 270 F. Supp. 3d

- 7 -

at 444-45.  The government has timely appealed only as to the dismissal of the bank-fraud charge.

## II. **Discussion**

On appeal, the government contends that, with respect to the bank-fraud charge, the district court should have measured the period of delay under the first Barker factor from the filing of the superseding indictment in April 2017, not from the filing of the initial indictment in March 2011.  The government does not challenge the district court's application of the second, third, and fourth Barker factors.  The government urges us to hold that the bringing of any additional charge in a superseding indictment resets the speedy trial clock, as it pertains to the additional charge, unless Double Jeopardy -- or possibly Due Process -- principles would bar the prosecution of the additional charge.

A.   Standard of Review

We have generally reviewed district court rulings on speedy trial motions for abuse of discretion.  Irizarry-Colón, 848 F.3d at 68 (citations omitted).  We noted in Irizarry-Colón that this practice "is in tension with the rules of other circuits, as well as this circuit's standard of review when considering other similar issues."  Id.  But we expressly declined to adopt a different standard because we found that the district court in that case committed an error of law, which "must be set aside even under an abuse of discretion test."  Id. (citing United States v.

- 8 -

Bater, 594 F.3d 51, 54 n.1 (1st Cir. 2010)).  We need not revisit the issue now because the parties do not dispute that abuse of discretion review applies.

B.    The Sixth Amendment Speedy Trial Right

The Sixth Amendment speedy trial right is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused."  Barker, 407 U.S. at 519.  It recognizes a "general concern that all accused persons be treated according to decent and fair procedures," id., "a societal interest in providing a speedy trial," id., and the risk that pretrial delay might result in witness unavailability and fading memories, which may prejudice both defendants and prosecutors, id. at 521.  The Sixth Amendment speedy trial right also serves to promote the interests of rehabilitation, minimize the amount of time potentially dangerous individuals are free on bond, "prevent oppressive pretrial incarceration," "minimize anxiety and concern of the accused," and "shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."  Id. at 519-531, 532; Loud Hawk, 474 U.S. at 311.

To determine whether a defendant has been deprived of the Sixth Amendment right to a speedy trial, we look to the four Barker factors, which include the length of delay; the reason assigned by the government for the delay; the defendant's responsibility to assert his right; and prejudice to the defendant,

particularly "to limit the possibility that the defense will be impaired," Barker, 407 U.S. at 530, 532.  Irizarry-Colón, 848 F.3d at 67.

The first Barker factor, the length of delay, is "a double enquiry," Doggett, 505 U.S. at 651, serving both as "a triggering mechanism for the rest of the [speedy trial] analysis, and a factor in that analysis."  United States v. Carpenter, 781 F.3d 599, 609 (1st Cir. 2015) (citing United States v. Souza, 749 F.3d 74, 81 (1st Cir. 2014)).  To invoke the Sixth Amendment speedy trial inquiry, a defendant must allege that the time between accusation -- whether by arrest or indictment -- and trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  Irizarry-Colón, 848 F.3d at 68 (quoting Doggett, 505 U.S. at 651-52); see also United States v. Muñoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999).  If the defendant makes this showing, we "then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  Irizarry-Colón, 848 F.3d at 68 (emphasis added) (quoting Doggett, 505 U.S. at 652). While "[t]here is no bright-line time limit dividing the lengths that trigger further Barker inquiry from those that do not," a "[d]elay of around one year is considered presumptively prejudicial, and the presumption that delay prejudices the defendant 'intensifies over time.'"  Id. (first quoting United

- 10 -

States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010), then quoting Carpenter, 781 F.3d at 610).

Here, assuming that the speedy trial clock for the bank-fraud charge started running upon the filing of the original indictment in March 2011, the resulting six-and-a-half-year delay[2] would not only trigger the speedy trial inquiry, but also create a strong presumption of prejudice to Handa under the fourth Barker factor. See Doggett, 505 U.S. at 652; Barker, 407 U.S. at 533 (describing delay of over five years as "extraordinary"). However, if the April 2017 superseding indictment reset the speedy trial clock as to the bank-fraud charge, the resulting delay would be fewer than five months, which may be insufficient even to trigger further Barker analysis.

For the reasons that follow, we measure the length of delay here from the return of the original indictment in March 2011 to the district court's September 2017 dismissal of the bank-fraud charge.

---

[2] We deem the end date for purposes of measuring the length of delay to be the district court's dismissal of the bank-fraud charge on September 11, 2017. See Loud Hawk, 474 U.S. at 306, 310, 314 (measuring length of delay from the filing of the initial indictment to the district court's dismissal of the superseding indictment); United States v. Seltzer, 595 F.3d 1170, 1176 (10th Cir. 2010) (same); United States v. Brown, 169 F.3d 344, 349 n.3 (6th Cir. 1999) (same).

- 11 -

C.    The Start Date for Calculating the Length of Delay

Handa argues that our decision in Irizarry-Colón and the Supreme Court's decision in Loud Hawk preclude the prosecution's argument as to which is the appropriate start date.  We do not agree, and explain why.

In Irizarry-Colón, the government filed four separate indictments against the defendant, who challenged the fourth indictment on, inter alia, Sixth Amendment speedy trial grounds. 848 F.3d at 64.  We held that "the district court should count the entire period of time since the first indictment when calculating the length of delay for the first Barker factor."  Id. at 70.  But the fourth indictment in that case contained the same charges, less two counts, as the first indictment.  Id. at 64.  As such, we had no occasion to consider whether a subsequent indictment bringing additional charges resets the Sixth Amendment speedy trial clock as to those charges.

It is true that the Irizarry-Colón panel predicated its holding on Loud Hawk, see id. at 69, in which the Supreme Court calculated the period of delay under the first Barker factor using the date of the initial indictment as the starting point, even though the government had filed superseding indictments bringing new charges, Loud Hawk, 474 U.S. at 306-10, 314.  However, the Court in Loud Hawk appeared to simply adopt the period of delay used by the lower courts, rather than engage in an analysis of the

impact, if any, of the new charges on the speedy trial clock.[3] See id. at 314. The holding in Loud Hawk was that (1) time periods during which defendants remain unindicted and free of other "substantial restrictions on their liberty" and (2) time consumed by interlocutory appeals should be given no weight under the second Barker factor, the reason for delay. See id. at 312, 316-17.

Consequently, we do not view Loud Hawk as dispositive of the issue in this case. See Texas v. Cobb, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); Brecht v. Abrahamson, 507 U.S. 619, 630-31 (1993) (holding that, although the Court had applied the harmless-error standard set forth in Chapman v. California, 386 U.S. 18 (1967), to "a handful of federal habeas cases," it was not bound to the conclusion that harmless error applied to collateral review because it had not "squarely addressed the issue, and . . . at most assumed the applicability of the Chapman standard on habeas"); United States v. Starks, 861 F.3d 306, 322-23 (1st Cir. 2017) (finding that the language of a prior First Circuit opinion was nonbinding dicta because the prior decision "did not address the precise issue before th[e] panel").

_____

[3] The government argued in its brief in Loud Hawk that the length of the delay under the first Barker factor should not have included any of the time during which an interlocutory appeal was pending or while there was no indictment in place. Brief for Petitioner at 10-14, Loud Hawk, 474 U.S. 302 (No. 84-1361), 1985 WL 669583, at *19-36.

While neither Irizarry-Colón nor Loud Hawk controls, both decisions are of a piece with a significant number of cases in which courts have measured the period of delay under the first Barker factor from the date of a defendant's initial accusation, even where a superseding indictment introduced new charges.

Most telling is our decision in United States v. Worthy, 772 F.3d 42 (1st Cir. 2014). The defendant there was arrested and, less than two weeks later, indicted for participating in a conspiracy to possess cocaine with the intent to distribute. Id. at 44. The government filed a total of four superseding indictments, which "added new counts" and in some instances "changed the type of substance involved." Id. We calculated the length of delay under the first Barker factor as the period between the date of the defendant's arrest and the scheduled start date for trial, without extensive discussion. See id. at 48. We did, however, acknowledge the fact that the superseding indictments contained new charges when discussing the second Barker factor. Id. at 49 n.10.

Sixth Amendment case law from a number of other circuits, which is not binding on us but is informative, reflects the same view we took in Worthy of how to calculate the start date for counting delay. See, e.g., United States v. Black, 830 F.3d 1099, 1103 n.1, 1106 n.11, 1112 (10th Cir. 2016) (measuring delay from original indictment where original indictment charged the

- 14 -

defendant with conspiring to distribute over five kilograms of cocaine and fourth superseding indictment replaced that charge with one count of "conspiring to distribute a mixture and substance containing a detectable amount of cocaine"); United States v. Battis, 589 F.3d 673, 675-76, 679 n.5 (3d Cir. 2009) (holding that the filing of a superseding indictment did not "restart[] the constitutional speedy trial clock" where the superseding indictment added an ammunition-possession charge to the firearm-possession charge in the original indictment); United States v. Jeanetta, 533 F.3d 651, 653-54, 656 (8th Cir. 2008) (measuring delay from original indictment where superseding indictment added weapons charges to initial charges of conspiracy to possess and possession with intent to distribute methamphetamine); United States v. Oriedo, 498 F.3d 593, 597-98 (7th Cir. 2007) (measuring delay from original indictment where second superseding indictment added five counts of knowingly and intentionally distributing cocaine base to initial charge for conspiracy to distribute and to possess with intent to distribute crack cocaine); United States v. Milhim, 702 F.2d 522, 523, 525 (5th Cir. 1983) (measuring delay from original indictment where superseding indictment added conspiracy and obstruction-of-justice charges to original charge for possession of counterfeit money).[4]

---

[4]     A recent case from the Sixth Circuit is to the same effect.  See United States v. Young, No. 3:98-00038, 2005 WL

- 15 -

In opposition, the government makes a number of arguments. It first cites three distinguishable cases from other circuits. Those cases are United States v. Nixon, 634 F.2d 306 (5th Cir. Jan. 1981); United States v. DeTienne, 468 F.2d 151 (7th Cir. 1972); and United States v. Derose, 74 F.3d 1177 (11th Cir. 1996).

In Nixon, the defendant was originally arrested for counterfeiting, and the government voluntarily dismissed the counterfeiting charge five months after the arrest. 634 F.2d at 308. Years later, the defendant perjured himself in front of a grand jury when he was called to testify as part of a renewed investigation into the alleged counterfeiting. Id. The defendant was then indicted for perjury. Id. The Fifth Circuit held that the speedy trial clock for the perjury claim ran from the date of

3417305 (M.D. Tenn. Dec. 13, 2005), aff'd, 657 F.3d 408 (6th Cir. 2011). The district court in Young resolved "whether the speedy trial analysis should begin when [the defendant] was arrested by the State of Oklahoma, initially indicted by the Federal Government on a drug [conspiracy] charge, or [later] indicted by the Government on federal murder charges [in a superseding indictment]." Id. at *3. The court first held that a state arrest does not start the speedy trial clock for a federal action. Id. at *4; see United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982). It then held that, with respect to the federal indictments, "the speedy trial clock is not offense specific," and as such, "the analysis must start at the first instance of federal charges brought against the Defendant: at the [first federal indictment] containing the drug conspiracy charge." Young, 2005 WL 3417305, at *4. The Sixth Circuit upheld the district court's decision in Young, and used the same period of delay as the district court in assessing the defendant's speedy trial claim on appeal. See Young, 657 F.3d at 414.

the perjury indictment, not the date of the defendant's initial arrest for counterfeiting.  Id. at 308-09.

In DeTienne, the defendant was initially arrested pursuant to a federal unlawful-flight warrant, which was issued in relation to state charges.  468 F.2d at 154.  The defendant was later indicted on unrelated federal charges.  Id.  The court held that Sixth Amendment speedy trial protection for the federal charges was triggered by the federal indictment, not the initial arrest.  Id. at 155.

And in Derose, the defendants were initially arrested for conspiring to possess marijuana with intent to distribute.  74 F.3d at 1180.  A year later, the district court dismissed the conspiracy charge on the government's motion.  Id.  Nearly another year later, the government obtained an indictment recharging the defendants with one count of conspiracy and adding a new count: possession of marijuana with intent to distribute.  Id.  The Eleventh Circuit held that the Sixth Amendment speedy trial clock for the possession charge started running upon the filing of the two-count indictment, rather than upon the initial arrest.  Id. at 1184-85.  In doing so, the Eleventh Circuit reasoned that "[n]otwithstanding the fact that proof of the possession charge relied on the same facts that supported the conspiracy charge, possession is a distinct and separate offense."  Id. at 1185.

According to the government, these cases stand for the proposition that we should adopt the following rule: an additional charge resets the speedy trial clock as to that charge so long as, under Double Jeopardy principles, the additional charge is not for the "same offense"[5] as one of the original charges.  We reject that argument.

It is worth repeating that the Sixth Amendment speedy trial right is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused."  Barker, 407 U.S. at 519.  And the Double Jeopardy bar has its own unique "historical roots."  Dixon, 509 U.S. at 704.  As such, we approach with skepticism the government's call for us to import Double Jeopardy principles into our Sixth Amendment speedy trial jurisprudence.

The government highlights the fact that some circuits have adopted a version of its proposed rule in the context of interpreting certain provisions of the Speedy Trial Act ("STA").[6] See, e.g., United States v. Thomas, 726 F.3d 1086, 1091 (9th Cir.

_____

[5]    To determine whether two offenses are the same for Double Jeopardy purposes, a court looks to "whether each offense contains an element not contained in the other."  United States v. Dixon, 509 U.S. 688, 696 (1993).  If not, they are the same offense, and the Double Jeopardy bar applies.  Id.

[6]    We reiterate that our decision is limited to the constitutional speedy trial clock.  We express no view as to whether the same principles could be applied to the STA.

- 18 -

2013) (holding that charges in a superseding indictment that are not required to be joined with the original charges under Double Jeopardy principles "come with a new seventy-day clock" under section 3161(c)(1) of the STA); United States v. Alford, 142 F.3d 825, 829 (5th Cir. 1998) (same); United States v. Marshall, 935 F.2d 1298, 1301-02 (D.C. Cir. 1991) (same).

Our law is clear that the Sixth Amendment protects a defendant's interest in a speedy trial "in a manner that does not necessarily track that of the more mechanistic statutory rules set forth in the [STA]." Irizarry-Colón, 848 F.3d at 67. For example, the total elapsed time since a defendant's indictment or arrest -- which is central to the Sixth Amendment speedy trial inquiry -- has no bearing on the STA analysis as long as trial commences within seventy nonexcludable days from the date the defendant appears before the court. See 18 U.S.C. § 3161(c)(1); Irizarry-Colón, 848 F.3d at 65. And while prejudice to the defendant is an essential consideration in evaluating whether there has been a deprivation of the defendant's Sixth Amendment speedy trial right, see Barker, 407 U.S. at 530, it is wholly irrelevant to determining whether the STA has been violated, United States v. Scalf, 760 F.2d 1057, 1060 n.2 (10th Cir. 1985).

The latter distinction is an important one. The Sixth Amendment Speedy Trial Clause protects the accused against a number of harms associated with a delay between accusation and trial,

including "'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence."  Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532).  Of these harms, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id. (quoting Barker, 407 U.S. at 532).

Under the government's proposed rule, the bringing of an additional charge in a superseding indictment would reset the speedy trial clock even if the additional charge is based on the exact same conduct as that underlying a previous charge, as long as the added charge is not for the "same offense" as the old charge.  But the prejudice to defendants associated with "dimming memories" and the "loss of exculpatory evidence" is often caused -- and exacerbated -- by the passage of time between the original charges and trial.  Moreover, because the government's proposed rule implicates the threshold inquiry under the first Barker factor, the filing of an additional charge in a new indictment under that rule would completely foreclose judicial examination of a defendant's Sixth Amendment speedy trial claim, including any examination of the particular prejudice suffered by the defendant (the fourth Barker factor), or the reasons for the government's delay (the second Barker factor).  See id. at 652.  As a

consequence, if Double Jeopardy principles were the only constraint on the government's ability to reset the Sixth Amendment speedy trial clock's start date, it would be too easy for the government to circumvent the Sixth Amendment Speedy Trial Clause's most important protective purpose by bringing additional charges. That is especially so considering the multitude of federal crimes that may arise out of the same conduct. Cf. Cobb, 532 U.S. at 177 (Breyer, J., dissenting) ("[C]riminal codes are lengthy and highly detailed, often proliferating 'overlapping and related statutory offenses' to the point where prosecutors can easily 'spin out a startlingly numerous series of offenses from a single . . . criminal transaction.'" (quoting Ashe v. Swenson, 397 U.S. 436, 445 n.10 (1970))).

We reject the government's assertion that defendants in such scenarios must rely only on the protections provided by statutes of limitations and the Fifth Amendment Due Process Clause's prohibition of prejudicial pre-indictment delay. That statutes of limitations and the Fifth Amendment, on the one hand, and the Sixth Amendment Speedy Trial Clause, on the other, might provide overlapping protection in some instances provides no justification for nullifying the latter's unique safeguards.

It strikes us that the start-date question is not subject to per se rules -- e.g., that the date of the original indictment is always the start date, or that it is never the start date when

- 21 -

a new indictment adds charges.  In our view, the Sixth Amendment inquiry requires careful consideration of all the factual circumstances presented.  See Barker, 407 U.S. at 522 (noting that the Sixth Amendment speedy trial right is "necessarily relative" and that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case" (quoting Beavers v. Haubert, 198 U.S. 77, 87 (1905))).  With that in mind, we articulate two types of circumstances, both present here, which affect the determination of the start date of the length-of-delay calculation for Sixth Amendment speedy trial purposes.

We hold, on these facts, that the bringing of the additional charge does not reset the Sixth Amendment speedy trial clock to the date of a superseding indictment where (1) the additional charge and the charge for which the defendant was previously accused are based on the same act or transaction, or are connected with or constitute parts of the common scheme or plan previously charged, and (2) the government could have, with diligence, brought the additional charge at the time of the prior accusation[7].[8]

---

[7]    Any additional delay caused by the government's further investigation into the crimes alleged in the new indictment would, of course, be properly considered under the second Barker factor: the reason for the delay.

[8]    The outcomes of both Nixon and DeTienne are consistent with this principle.  In Nixon, the conduct underlying the perjury

Here, the same act or transaction, or common scheme or plan -- the fraudulent inflation of inventory to secure financing from banks -- undergirds both the bank-fraud charge in the superseding indictment and the wire-fraud charges in the original indictment. The government also could have, with diligence, brought the bank-fraud charge in March 2011, as the district court permissibly found. Of course, in evaluating the defendant's Sixth

---

indictment was wholly separate from -- and postdated -- the conduct underlying the defendant's counterfeiting arrest. 634 F.2d at 308. Moreover, the government could not have brought the perjury charge at the time of the defendant's original arrest, because the perjury occurred later. Id. Similarly, in DeTienne, the defendant's federal charges were completely unrelated to his state charges. 468 F.2d at 154.

While our holding may be inconsistent with the result in Derose, we view that case as having limited persuasive force, given that it appears to have turned on a misreading of the Supreme Court's decision in Dillingham v. United States, 423 U.S. 64 (1975) (per curiam). Compare Derose, 74 F.3d at 1184 (attempting to distinguish Dillingham on the basis that the defendant in Dillingham was indicted on the same charges for which he was arrested), with United States v. Palmer, 502 F.2d 1233, 1234 (5th Cir. 1974) (stating that the defendant in Dillingham was arrested for a single violation of the Dyer Act, but that he was indicted for fifteen charges including violations of both the Dyer Act and the general federal conspiracy statute), rev'd sub nom., Dillingham, 423 U.S. 64. Moreover, to the extent that the Eleventh Circuit found the district court's dismissal of the conspiracy charge to be dispositive with respect to the first Barker factor, see Derose, 74 F.3d at 1185, such reasoning is arguably inconsistent with Loud Hawk. See 474 U.S. at 312, 314 (including the time during which the charges against defendants were dismissed and the defendants remained free from arrest in the period of delay under the first Barker factor, but giving such time no weight under the second Barker factor).

Amendment speedy trial claim, the other Barker factors must be considered as well. They have been here.

The government contended to the district court that it "did not have the requisite evidence to charge bank fraud" at that time because it could not establish whether Bank of America, N.A. and LaSalle Bank Midwest N.A., the corporate parents of the entities that provided financing to Alpha Omega, were "federally insured." Handa II, 270 F. Supp. 3d at 443 n.2. The district court supportably rejected this contention as being belied by the record, given that the original indictment alleged that the two parent corporations were "national bank[s]," and the government's 2008 application for a search warrant of Alpha Omega included an affidavit from a government agent referring to both "LaSalle Bank" and "Bank of America" as "federally insured financial institution[s]," id.

Accordingly, the period of delay for the bank-fraud charge is measured here from the filing of the initial indictment on March 3, 2011. The resulting six-and-a-half-year delay is more than enough to trigger further speedy trial inquiry, and because the government does not challenge the district court's analysis of the remaining Barker factors, we find no abuse of discretion in the district court's conclusion that Handa was deprived of his Sixth Amendment right to a speedy trial with respect to the bank-fraud charge.

The district court's dismissal of Count 13 of the superseding indictment is <u>affirmed</u>.